STATE OF CONNECTICUT *v.* DENNIS WILLIAM JACKSON
(11614)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued November 13, 1985—decision released January 14, 1986

---

*Patty J. Pittman,* special public defender, with whom, on the brief, was *James E. Swaine,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Robert J. Devlin,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Dennis W. Jackson, was charged in a three count information with sexual assault in the first degree, in violation of General Statutes (Rev. to 1979) § 53a-70 (a),[1] kidnapping in the second degree, in violation of General Statutes § 53a-94 (a),[2] and robbery in the first degree, in violation of General Statutes (Rev. to 1979) § 53a-134 (a).[3]

[1] At the time of the offense, General Statutes (Rev. to 1979) § 53a-70 (a) provided: "Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or (2) by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] General Statutes § 53a-94 (a) provides in pertinent part: "Sec. 53a-94. KIDNAPPING IN THE SECOND DEGREE: CLASS B FELONY. (a) A person is guilty of kidnapping in the second degree when he abducts another person. . . ."

[3] At the time of the offense, General Statutes (Rev. to 1979) § 53a-134 (a) provided: "Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of dangerous instru-

A jury found the defendant guilty on each count and he was sentenced to consecutive terms aggregating an effective sentence of not less than nineteen years nor more than thirty-eight years. On appeal, the defendant claims the trial court erred (1) in limiting his cross-examination of the victim, and (2) in its instructions to the jury on the issue of insanity. We find no error.

The jury could reasonably have found the following relevant facts: On the afternoon of September 9, 1978, at approximately 4 p.m., the victim, who was on her way to work, stopped at a New Haven bar called Ron's Place. She was employed as a waitress at another New Haven establishment know as Tumbledown Dick's, where she was scheduled to report for work at 5 p.m. While in Ron's Place, she was engaged in conversation by the defendant, whom she did not know and had never seen previously. The defendant asked the victim for a ride to another area of New Haven. She initially refused, fearing she would be late for work. She relented, however, when the defendant told her that he could not wait for a cab because he was in a hurry to meet someone and he would pay her three dollars for the ride. The victim testified that the defendant spoke well, was very polite and seemed like a nice person.

The defendant and the victim left Ron's Place together and entered the victim's Volkswagen, which was parked nearby. The defendant directed the victim to a driveway off Congress Avenue in New Haven. When the victim stopped the car to let the defendant

---

ment; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

out, he produced a knife, which he held to her throat, inflicting a slight wound, and forced her into a nearby vacant building. In the building, he ordered the victim to remove all her clothing and forced her repeatedly to engage in vaginal and oral intercourse. The victim implored the defendant to release her, but he refused. He threatened her life and told her "he was good with a knife and knew how to chop people's heads off."

After approximately three hours, the defendant directed the victim to get dressed, and they left the vacant building and returned to the victim's car. Once in the car, the defendant demanded the victim's money and jewelry. She told him she had no money, but turned over two rings she was wearing. At that point, the defendant again forced the victim from her car and informed her that she was going to come with him and do what he wanted or he would kill her. As they were walking down the driveway, the victim broke away from the defendant, fled, and made her way to a nearby liquor store where the proprietor called the police.

On the evening of the incident, the victim gave an excellent description of the defendant to Detective Teixeira. On September 30, 1978, she identified him from a police photo board. She also positively identified the defendant at trial and described distinctive scars on his arms and unique tattoos on the backs of his hands. The jury viewed the defendant's arms and hands at the trial.

The defendant's first claim is that his right to confrontation guaranteed by the sixth and fourteenth amendments to the United States constitution was violated because the trial court impermissibly limited his cross-examination of the victim. A review of the entire transcript of the victim's testimony does not support the defendant's claim. The defendant "had ample opportunity to cross-examine the [victim] and it is this

right which forms the core of the confrontation clause." *State* v. *Burns,* 173 Conn. 317, 324, 377 A.2d 1082 (1977).

The cross-examination of the victim covered approximately seventy-five pages of trial transcript. The defendant complains that the trial court, toward the beginning of the cross-examination, excluded four questions as irrelevant. In response to a question, the victim said that she had lived at 1606 Chapel Street for approximately two weeks prior to the date of the incident. The court sustained the state's objection to the next question which was, "And where did you live prior to that?" The trial court also sustained the state's objections to questions as to who the victim's employer was at Tumbledown Dick's, how many children she had, and with whom she was living at the time of the incident. In the context of this case, wherein the victim testified that she was kidnapped, sexually assaulted and robbed by an assailant she did not know and had never seen before, the questions excluded by the trial court can hardly be regarded as crucial. The inquiries concerning the witness' children and the identity of the person she was living with were clearly irrelevant and may have been intended to attack the credibility of the witness because of unrelated sexual misconduct, contrary to the principles of *State* v. *Mastropetre,* 175 Conn. 512, 518–19, 400 A.2d 276 (1978). The defendant was permitted to ask numerous other questions concerning the victim's background and employment. The cross-examination of the victim was lengthy, wideranging, and fully comported with the defendant's sixth amendment right of confrontation. See *United States* v. *Vasilios,* 598 F.2d 387, 389 (5th Cir. 1979). "The defendant's right to cross-examination . . . is not absolute and is subject to reasonable limitation. . . ." *State* v. *Thompson,* 191 Conn. 146, 148, 463 A.2d 611

(1983). "Every evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985). In this instance, the defendant has clearly put a constitutional tag on a nonconstitutional claim. See *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982).

The general rule is that if the defendant is permitted cross-examination sufficient to satisfy the sixth amendment, restrictions on the scope of the cross-examination are within the sound discretion of the trial court. *State* v. *Vitale,* supra, 402. "Questions of relevancy cannot be adjudicated by precise rules of law and must be left to be determined in each case according to reason and judicial experience." *Johnson* v. *Healy,* 183 Conn. 514, 516, 440 A.2d 765 (1981). "Every reasonable presumption should be given in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. Reversal is required only when an injustice appears to have occurred." *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980). Although cross-examination should be liberally allowed, the trial court may restrict it to evidence which is competent, material and relevant. *State* v. *Reed,* 174 Conn. 287, 299, 386 A.2d 243 (1978). The questions excluded by the trial court were, under the circumstances evident from the record, irrelevant to any aspect of the case or the victim's credibility. The trial court properly sustained the state's objections.

There is no merit to the defendant's first claim.

The defendant's second claim is that the trial court erred in its charge to the jury on the issue of insanity by intermingling the statutory definition of insanity

found in General Statutes (Rev. to 1979) § 53a-13[4] with a rejected common law definition of insanity known as M'Naghten's Rule. See *M'Naghten's Case,* 8 Eng. Rep. 718, 722 (1843). The defendant claims, consequently, that he was deprived of a fundamental constitutional right and a fair trial and that his claim is therefore entitled to review by this court. *State v. Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The trial court clearly informed the jurors that the statutory definition of insanity contained in § 53a-13 was the test they were to apply to determine if the defendant was criminally responsible for his acts. It did, however, use the statutorily superseded *M'Naghten* rule as an example when explaining the statutory definition.

The defendant did not file a request to charge on the issue of insanity nor did he take an exception concerning this aspect of the trial court's instructions on the issue of insanity. Ordinarily, the defendant's failure to take an exception to the trial court's charge renders his claims unreviewable on appeal. Practice Book §§ 854, 3063. "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State v. Evans,* supra, 69. Under the circumstances of this case, we will review the defendant's claims under the *Evans* bypass doctrine only if we determine that it involves the deprivation of a fundamental constitutional right and a fair trial.

We have recently had occasion to consider this exact issue. *State v. Hinckley,* 198 Conn. 77, 502 A.2d 388

---

[4] At the time of the offense, General Statutes (Rev. to 1979) § 53a-13 provided: "Sec. 53a-13. INSANITY AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

(1985). What we said in *Hinckley* applies to the defendant's claim on this appeal. "The defendant here, however, does not claim that the trial court failed to charge the jury on the issue of insanity or failed to include the statutory definition. Nor does he claim that the trial court failed sufficiently to instruct the jury as to the state's burden of proof on the issue of insanity. He claims only that a component of the particular definition of insanity used in the charge did not comport with the statutory definition." Id., 84. "Although the trial court clearly has a constitutional obligation to charge the jury on insanity because the state bears the burden of proof on the issue, this circumstance does not transform every deviation from the particular statutory definition chosen by the legislature into a constitutional error." Id. The fact that the trial court gave an explanation of the statutory definition of insanity that included a common law test does not implicate any fundamental constitutional right that would, in the absence of an exception to the court's charge, afford the defendant review under the exceptional circumstances doctrine of *State* v. *Evans. State* v. *Hinckley,* supra, 87.

Further, we cannot say that the inclusion of the common law definition in the charge as an example of an instance of insanity within the statutory definition "constituted a manifest injustice to the defendant so as to impair the effectiveness or integrity of his trial." Nor has the defendant met his burden of showing that "[t]he additional language in the charge resulted in an unreliable verdict or a miscarriage of justice." *State* v. *Hinckley,* supra. There was, therefore, no plain error as contemplated by Practice Book § 3063, which provides that this court "may in the interests of justice notice plain error not brought to the attention of the trial court."

We do not approve of the use of a common law definition of insanity in conjunction with an instruction on

the statutory test. *State* v. *Toste,* 178 Conn. 626, 633, 424 A.2d 293 (1979). However, in the absence of an exception to the trial court's charge we will not review the defendant's claim as an exceptional circumstance under *Evans* or as plain error under Practice Book § 3063.

There is no error.

In this opinion the other judges concurred.

