## STATE OF CONNECTICUT *v.* DONALD UTZ
### (12322)

HEALEY, SHEA, DANNEHY, CALLAHAN and MENT, Js.

Argued June 12—decision released August 19, 1986

*Robin J. Hammeal-Urban,* with whom were *Todd D. Fernow* and, on the brief, *Michael R. Sheldon* and *Diane L. Welch,* certified legal intern, for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *Walter Flanagan,* state's attorney, and *Joseph Burns* and *Brian J. Kornbrath,* law student interns, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Donald Utz, was found guilty after a trial to a jury of murder in violation of General Statutes § 53a-54a, attempted murder in violation of General Statutes §§ 53a-54a and 53a-49, and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38. He received concurrent sentences on these counts which resulted in a total effective sentence of life imprisonment.

The defendant appealed, claiming that the trial court erred in its jury instructions: (1) on the issue of criminal responsibility, thereby depriving him of a fair trial by permitting the jury to convict him without having found beyond a reasonable doubt that he was criminally responsible at the time of the offenses charged; (2) that the jury could not find him "guilty but not criminally responsible" unless his conduct in the commission of the crimes charged was "caused by" his mental disease or defect; (3) that the defendant could be found criminally responsible if the jury found that at the time of the offenses charged he was able either to appreciate the wrongfulness of his actions or, alternatively, to conform his conduct to the requirements of law; and (4) on the issue of intoxication, thereby depriving him of a fair trial on the charges of murder and attempted murder by permitting the jury to convict him without first having found beyond a reasonable doubt that he harbored an intent to cause the death of another person despite his intoxication. We find no error.

The issues to be resolved require that we set out certain facts that the jury could reasonably have found.[1] The defendant and Karen Boyce married in 1975 and the marriage became stormy from almost the early stages. By February, 1982, the marriage had deteriorated to the point that Karen left the defendant and moved into the New Fairfield home of her brother, Robert Boyce, and his wife Pamela. She returned to the defendant for about six days but left for the final time when he threatened to kill her if she or her brother tried to contact the police. He made no attempt to contact her for about three months. Between mid-June and mid-July of 1982, the defendant made several telephone calls to Robert Boyce's residence to speak to his wife but was informed by Robert or Pamela that she was "unavailable." The tenor of his calls became such that on July 9, 1982, Robert Boyce filed a complaint against the defendant with the state police. On July 12, 1982, Karen instituted divorce proceedings. About a week later her parents, Dwight and Margaret Boyce, who were also apprehensive, communicated their concerns to the state police. On July 23, 1982, the defendant telephoned Robert Boyce from New York, stating that he wanted to bring his wife's belongings to Robert's home but he was told that he should ship the items and that there was no need for him to come. The defendant did not like that suggestion at all.

On July 24, 1982, the defendant, who had spent the previous night at the home of friends in New Milford, telephoned Robert Boyce's residence in New Fairfield a little after 5 p.m. and asked excitedly: "Please, please, can I come over." Shortly thereafter, the defendant left New Milford, taking the suitcase he had brought with him the preceding day.

[1] At the trial, the state presented twenty-three witnesses and the defendant presented six witnesses. Some forty-three exhibits were admitted into evidence.

Dwight and Margaret Boyce arrived at Robert's house for a visit about 7:25 p.m. Shortly thereafter, Robert saw the defendant driving up to his house. As the defendant was exiting his car, Robert Boyce told him through a window to leave, that he was not welcome. As the defendant approached the house, Robert's wife, Pamela, decided to call the police but was unable to do so because the defendant had disconnected the telephone wires. The defendant, standing on the porch and carrying a large rock, said that he wanted ten minutes with his wife and insisted on seeing her. Dwight refused and Robert told him that this "wouldn't do any good," that the police were on the way to which the defendant responded, "check your phone." The defendant then pulled a gun and from a distance of several feet, aimed the gun first at Dwight. Then, looking "very deliberate, alert, looking straight at [him]," the defendant aimed the gun at Robert saying: "Just move an inch." Robert dropped to the floor, rolled away from the door and then hurried down a hall to the bedroom to get his gun. While Robert ran back to the bedroom to get his gun, the first of two shots went off in the house. Inside the house, the defendant, about two to three feet from Dwight with his "arm . . . stretched out" and "steady" and with eyes that reminded Margaret "of cold steel," fired one more shot at Dwight Boyce that lodged between his shoulder blade and chest cavity and which resulted in his death. Having obtained his gun, Robert crouched near the bedroom door and the defendant, from down the hall, fired a shot in Robert's direction.

After the shooting, the defendant left the house and "very calmly" walked towards his car. He "took his time getting into [the] car," he lit a cigarette and drove away. He returned to New Milford and showed his friends a gun and said that "he shot them. He thought he shot both of them." He left and soon thereafter he

was apprehended by Brookfield police in his car on Route 25. At that time, he was observed operating his motor vehicle in a rather evasive manner to avoid apprehension. He was driving his car without impairment although the arresting officer did testify that in the police car he "smelled a strong odor of . . . an alcoholic beverage" on the defendant's breath. He submitted to the arrest at which time the police frisked him and found the handgun. Tests performed upon a urine sample taken at 11:45 p.m. that night demonstrated that the defendant had a blood alcohol content of .10 percent. An extrapolation from the results of that test later indicated that his blood alcohol level would have been between .16 and .18 percent at the time of the shooting.

Two psychiatrists, who had examined the defendant, James Alexander and Paula McFadden, were called by the defense to testify at the trial. McFadden testified that it was her opinion that the defendant did not, as a result of mental disease or defect, lack substantial capacity to conform his conduct to the requirements of the law. She disagreed with Alexander's opinion that the defendant "lacked the substantial capacity to correspond his conduct to the precepts of the law, due to mental illness." McFadden also opined that "the psychiatric problem or mental disease which I believe he has did not reach the proportion so much so that he would lose the capacity to tell right from wrong, or lose the ability to conform his behavior to the law."

I

We will first address the defendant's claim that the trial court's charge on criminal responsibility deprived him of a fair trial by permitting the jury to convict him without having found him proven guilty beyond a reasonable doubt of having been criminally responsible at the time of the offenses charged. The defendant argues

that erroneous instructions on the presumption of criminal responsibility gave rise to the reasonable possibility that the jury convicted him in reliance upon that presumption in derogation of his constitutional rights.

The defendant points specifically to two portions of the charge. The first portion, which was given just after the first of two recesses[2] taken during the charge, was: "It is presumed that the defendant is criminally responsible when a trial starts. Once the issue is raised by the Defense, then it is the responsibility of the State to prove criminal responsibility beyond a reasonable doubt." The second portion, which came somewhat later in the charge, was: "Now, I've explained to you that a person is presumed criminally responsible, but when it is brought up by the Defendant, the issue of criminal responsibility, in the Defendant, on December 30th, 1982, in a pleading, said the Defendant intended to rely upon the defense of mental disease or defect at the time of the alleged crime and intends to produce expert testimony relating to a mental disease or defect of the mental state required for the offense charged. At that time, it became an element that the State had to prove beyond a reasonable doubt the criminal responsibility of the Defendant."

The defendant argues that these instructions were erroneous for two reasons: first, they "misleadingly" brought the presumption of criminal responsiblity before the jury even though that presumption had lost all operative effect once substantial evidence of his claimed lack of criminal responsibility had been raised and, second, they "woefully misdescribed" the manner in which he had raised his claimed lack of criminal responsibility "to the point that the burden of proving

---

[2] At the outset of the charge, the court estimated that its instructions would take between two and one-quarter and three hours. At its conclusion, defense counsel observed in taking an exception that "the description of the law went on for about three hours."

it had become a part of the state's case." He argues that nothing in these instructions, "or in any others given," suggested an inconsistency between the state's burden of proof and the presumption that the defendant was criminally responsible and that nothing else had been said "which could have convinced a reasonable juror" that the presumption would disappear or lose its effect once evidence of his lack of criminal responsibility came in at trial. Therefore, he claims, as in *State* v. *Rossier,* 175 Conn. 204, 209, 397 A.2d 110 (1978), the failure of the trial court to "make it clear to the jury that the state cannot rely on the presumption of sanity" but has the burden of proving the defendant sane beyond a reasonable doubt was reversible constitutional error. He maintains that the "cumulative effect" of the instructions, notwithstanding the "myriad" references to the state's burden of proof, was to mislead the jury to convict him in reliance upon a presumption of criminal responsibility. We do not agree.

" 'It is a well-established rule that the charge to the jury must be read as a whole and that individual instructions are not to be judged in "artificial isolation" from the overall charge.' " *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977); *State* v. *Braswell,* 194 Conn. 297, 311, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985). In reviewing instructions, we "will not sever one portion [of the charge] and analyze it in isolation from the rest." *State* v. *Vasquez,* 182 Conn. 242, 246, 438 A.2d 424 (1980); see *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Harrison,* 178 Conn. 689, 693, 425 A.2d 111 (1979). The test is whether the charge as a whole presents the case to the jury so that no injustice will result. *State* v. *Stepney,* 191 Conn. 233,

247, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Moss,* 189 Conn. 364, 370, 456 A.2d 274 (1983). "Where, as here, the claimed error is one of constitutional magnitude, we must determine whether, in light of the charge as a whole, it is reasonably possible that the jury were misled. *State* v. *Mason,* 186 Conn. 574, 585–86, 442 A.2d 1335 (1982)." *State* v. *Jones,* 193 Conn. 70, 90, 475 A.2d 1087 (1984); *State* v. *Johnson,* 188 Conn. 515, 527, 450 A.2d 361 (1982). There is also, of course, no question but that it is fundamental that proof of guilt in a criminal case must be proved beyond a reasonable doubt on each essential element of the crime charged. See *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *DelVecchio,* 191 Conn. 412, 419, 464 A.2d 813 (1983).

It would have been preferable for the trial court to have omitted any reference to the presumption of criminal responsibility and to have charged simply on the state's burden of proving criminal responsibility beyond a reasonable doubt. *State* v. *Rossier,* supra, 209; *State* v. *Holmquist,* supra, 150. Not to have done so, however, does not mandate reversible error. *State* v. *Holmquist,* supra. Under the circumstances, including an examination of the charge as a whole, we cannot say that it was reversible error.

Initially, we note the last sentence of the second quoted portion of the charge attacked by the defendant: "At that time *it* became an element that the State had to prove beyond a reasonable doubt the criminal responsibility of the defendant." (Emphasis added.) It is clear that "it" in that sentence, when read in context, not only of the portion attacked, but of the whole charge, refers to the criminal responsibility of the defendant. That this is so is underlined by the fact that the trial court in correcting its inadvertent characteri-

zation of criminal responsibility as a "defense" told the jury that that burden was on the state.[3]

That a reasonable juror might not be misled as claimed is also underscored by other portions of the charge. Early in its charge, the court stated: "So [the affirmative defense of extreme emotional disturbance] is the *only* instance in which the Defendant has *any* burden of proving *anything* in the case. Otherwise, the State has the burden of proof." (Emphasis added.) Four sentences later, the court indicated that it would be instructing "on the charge of murder, Section 53a-54a of our statutes. I will be telling you to consider the *statutory elements* that are in the statute as I read it to you. Then I will be instructing you on how to deal with the *additional element* of criminal responsibility, that's because the issue of criminal responsibility *has been raised here.*" (Emphasis added.) On a number of occasions, the court instructed the jury that the state must prove criminal responsibility beyond a reasonable doubt. This burden went, the court said, "to the third element . . . the criminal responsibility element." It charged that the state "has the burden of proving that the Defendant was criminally responsible beyond a reasonable doubt . . . . The State did not have to offer evidence to establish criminal responsibility until the Defendant had

---

[3] Here we note that the first quoted instruction attacked by the defendant was given by the court immediately after the first recess during the charge. This language of the court was immediately preceded by the following: "Ladies and gentlemen, it was pointed out to me by Counsel [the public defender] that when I was talking about the finding by the Jury of guilty but not criminally responsible by reason of mental disease or defect, that I inadvertently used the word 'defense.' " This was obviously generated by the court's prerecess statement: "As I will be indicating in some detail, the Defendant, having once raised the defense of guilty but not criminally responsible, it becomes the burden of the State to prove beyond a reasonable doubt that the Defendant *was* criminally responsible within the meaning of the statute." (Emphasis added.)

raised *it during the course of the trial.*"[4] (Emphasis added.) We point out that only recently we have said that "our practice [imposes] the burden upon the state to prove [criminal responsibility] beyond a reasonable doubt once the issue has been properly *raised* by the filing of a seasonable notice [under Practice Book § 758] *and* by presenting substantial evidence tending to prove [criminal responsibility]." (Emphasis added.) *State* v. *Young,* 191 Conn. 636, 648, 469 A.2d 1189 (1983).

Although the trial court did not, in haec verba, charge that the presumption of criminal responsibility had been completely dropped from the case, it is not reasonably possible that the jury might have understood that the state could rely on the presumption as claimed. At oral argument before us, the defendant claimed that the presumption, erroneously left for the jury to rely upon, was not a mandatory but was a burden shifting presumption. This "presumption" was definitely not burden shifting as the instructions made it emphatically clear that the state had the burden of proof on criminal responsibility throughout. The trial court, as was its duty, determined that there was substantial evidence in the case tending to show lack of criminal responsibility; see *State* v. *Holmquist,* supra, 150; and, in its instructions, placed the burden squarely on the state

---

[4] It is not logical, therefore, as the defendant suggests in his attack on the two portions of the charge earlier, that a juror "must" believe that he "raised" his claimed lack of criminal responsibility on December 20, 1982, when he filed his written notice of that claim some five months before trial. This written notice that a defendant "intends to rely upon the defense of mental disease or defect" must be filed pretrial, or at such later time as the court directs. Practice Book § 708.

The examination of the charge as a whole demonstrates that the court made it clear that lack of criminal responsibility had been "raised" in legal contemplation for the jury's purposes, by the introduction of evidence *at the trial.* Any fair reading of the entire charge belies the claim that the trial court "woefully misdescribed" the manner in which the defendant raised it. Likewise, the issue of who always had the burden on that matter at trial was abundantly clear.

to prove criminal responsibility. That the state could not rely on the presumption, that it was no longer in the case, and that the defendant's criminal responsibility was an element for the state to prove beyond a reasonable doubt are manifest from any fair reading of the entire charge. It was therefore not reasonably possible that the jury was misled. Cf. *State* v. *Rossier,* supra.

## II

The defendant next claims that the trial court erred in instructing the jury that it could not find him guilty but not criminally responsible unless his conduct in committing the offenses charged was "caused by" his mental disease or defect. The sentence in the instructions to which this claim of error is directed is the following: "For a person not to be responsible for his criminal actions, there must be a causal relationship between the mental disease or defect that he had at the time of the conduct, if any is found in the criminal conduct, so that it could be found that there were—that were it not for such mental disease or defect, the conduct would not have taken place."

The defendant[5] argues that because this instruction contains proscribed *Durham* rule language; see *Durham* v. *United States,* 214 F.2d 802 (D.C. Cir. 1954); which is not included in our present statutory definition, it would at the least have confused the jury on the standard to be used for assessing criminal responsibility. He also claims that the jury might have fairly construed such a charge to require that the mental disease or defect be the "only cause" of the criminal act

---

[5] The defendant did file a request to charge on the statutory definition of insanity. See *State* v. *Carter,* 198 Conn. 386, 395, 503 A.2d 576 (1986). Although the state suggests that the "causal relationship" context in the defendant's request "induced" any claimed vagueness in the challenged instruction, we need not reach that argument.

and thus that the jury could easily have found that the state met its burden of proof on criminal responsibility "by proving that some other factor, such as his rocky relationship with his wife or the impending failure of his New York business had contributed, however slightly, to the occurrence of the crimes." On that basis alone, he continues, the jury might have been so misled as to convict him without the requisite proof or they might have been "merely confused" as to the proper legal standard to employ in deciding the issue of criminal responsibility. In any event, the defendant maintains that there was at least a reasonable possibility that the jury had been misled so as to convict him without first having found him criminally responsible within the meaning of General Statutes § 53a-13.

We decline to review this claim in accordance with our decisions in *State* v. *Carter,* 198 Conn. 386, 503 A.2d 576 (1986), *State* v. *Harman,* 198 Conn. 124, 502 A.2d 381 (1985), and *State* v. *Hinckley,* 198 Conn. 77, 502 A.2d 388 (1985). Moreover, we decline to modify our decisions in those cases in order to review this claim as the defendant asks us to do.

In this case, the defendant, as in *Carter,*[6] *Harman, Hinckley* and *State* v. *Jackson,* 198 Conn. 314, 502 A.2d 865 (1986), failed to except to the challenged instruction at the trial. In *Carter,* we stated that "the failure properly to object to a court's charge on insanity renders the claim of error unreviewable by this court even under the exceptional circumstances doctrine of *State* v. *Evans* [165 Conn. 61, 327 A.2d 576 (1973)], because the trial court is under no *constitutional* obligation to charge the jury with a definition of insanity that is 'beyond criticism in every particular.' *State* v. *Harman,* supra. In each of those cases, because the

---

[6] In *State* v. *Carter,* 198 Conn. 386, 396, 503 A.2d 576 (1986), we determined that the defendant's exception was "inadequate."

defendants took no exception to the trial court's charge on insanity their respective claims of error were not reviewed by this court. See *State* v. *Jackson,* 198 Conn. 314, 502 A.2d 865 (1986)." (Emphasis in original.) *State* v. *Carter,* supra, 396–97.

As we said in *Hinckley:* "Although the trial court clearly has a constitutional obligation to charge the jury on insanity because the state bears the burden of proof on the issue, this circumstance does not transform every deviation from the particular statutory definition chosen by the legislature into a constitutional error." *State* v. *Hinckley,* supra, 84. The defendant attaches a constitutional label to what is analytically, at its core, a nonconstitutional claim. See, e.g., *State* v. *Shipman,* 195 Conn. 160, 165, 486 A.2d 1130 (1985); *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982).

It does bear noting, however, that the challenged instruction was given only once and that the trial court charged the statutory test correctly on at least five occasions during its instructions to the jury. Moreover, the last instruction the jury received was also correct. "The mere fact that the court *once* interjected [a proscribed insanity rule] does not raise any fundamental constitutional right that would warrant review" as claimed. (Emphasis added.) *State* v. *Carter,* supra, 397. Nor, as we stated in *Carter,* quoting from *Hinckley,* has the inclusion of the proscribed language on one occasion " 'constituted a manifest injustice to the defendant so as to impair the effectiveness or integrity of his trial,' as is necessary to establish plain error. *State* v. *Hinckley,* supra, 88." *State* v. *Carter,* supra; see *State* v. *Jackson,* supra, 321.

### III

The defendant claims that the trial court erred in instructing the jury that "it could find him criminally responsible if it found that at the time of the charged

offenses he was either able to appreciate the wrongfulness of his actions or, alternatively, able to conform his conduct to the requirements of law." This claimed error, he asserts, gave rise to a reasonable possibility that the jury found him criminally responsible by a constitutionally impermissible means, that is, without first finding the element of criminal responsibility proven beyond a reasonable doubt. The defendant had filed a request to charge which the state conceded before us was an accurate statement of the law. At the trial, the defendant claimed only volitional and not cognitive insanity.

During its deliberations the jury sent the following note to the court: "Could we please have the Connecticut statute for the criteria for murder read to us again?" At the end of this first reinstruction, given as the result of this note, the trial court said: "Since you used in your question the word 'criteria,' I give you the additional criteria that the Defendant must have substantial capacity to appreciate the wrongfulness of his conduct *or* to conform his conduct to the requirements of law." (Emphasis added.) It is this instruction which is challenged and to which no exception was taken.

We decline to review this claim because of our decisions in *Carter, Hinckley* and *Harman*. No timely exception was taken to the challenged instruction at the time it was given. Without setting out again our reasons for not reviewing the *Durham* claim above, we will make certain observations here. The challenge to this instruction, of course, swirls around the court's use of the word "or" in the first reinstruction given to the jury during its deliberations. The instruction was incorrect. It had, however, been preceded by at least six correct instructions in which the court had charged substantially as the defendant had requested. Later, the court gave a second reinstruction in response to another note from the jury which asked if the court

would read a brief summary of the charge pertaining to murder.[7] In response to that question, the court again charged on the elements of the crime of murder. This reinstruction was the final charge the jury heard on this matter and included an accurate instruction on criminal responsibility.[8] Under the circumstances, the *Hinckley-Carter* line of decisions control our action on this claim. In so concluding, we are not convinced that, after parsing the defendant's claim, any fundamental constitutional right is implicated; see, e.g., *State* v. *Shipman,* supra; *State* v. *Gooch,* supra. We are also not persuaded that the solitary instance of the use of the word "or" under the circumstances " 'constituted a manifest injustice to the defendant so as to impair the effectiveness or integrity of his trial' as is necessary to constitute plain error." *State* v. *Carter,* supra, 397, quoting from *State* v. *Hinckley,* supra, 88.

## IV

The defendant's final claim is that the trial court's instructions on intoxication gave rise to the reasonable possibility that the jury convicted him without having found proven that, in spite of his intoxication, he harbored the intent to cause the death of another person and, therefore, deprived him of a fair trial on the charges of murder and attempted murder. He filed a

---

[7] The transcript and the court file indicate that the question in fact received from the jury was the following: "Could you please read a brief summary of the Judge's charge pertaining to murder and/or could we have it in writing?" After discussing this question on the record with counsel, as it had done with the earlier question from the jury, as to what it intended to tell the jury, the court did reinstruct the jury orally.

[8] This instruction, to which no exception was taken, was the following: "The third element the State must prove beyond a reasonable doubt is criminal responsibility. A person is criminally responsible and is responsible for his crime and unlawful conduct if, at the time of such conduct, he does not, as a result of such mental disease or defect, lack substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."

request to charge on intoxication and took an exception[9] to the charge as given by the court.

In attacking the court's instruction[10] on intoxication, the defendant, claims that the court's statement that

[9] The exception taken at the trial was the following: "As I understand the law, I believe the burden is on the State to overcome the evidence on intoxication and prove that that evidence did not cause a substantial disturbance of the Defendant's mental and physicial capacity. In listening to your charge, I don't think the Jury got the impression, or understanding that that was the State's burden."

[10] The portion of the intoxication instruction that the defendant challenged, together with the emphasis and deletions, as it appeared in his brief, was the following: "Voluntary intoxication is in itself no excuse for a crime. *It becomes significant only when it has proceeded so far that it affected the operation of the mind of the accused and made him incapable for the time being of forming a rational intent or of controlling his will. Its presence to that extent negates the existence of criminal intent.* . . . It is *only* when he is *so* intoxicated that, at the time the crime was committed, he was *unable rationally to consider any matter, or intelligently to harbor any intent or to control his activities that intoxication is a defense.* . . . Now, if you find he was *so intoxicated* at the time of the alleged offense that he *could not have possessed* the required intent or knowledge necessary to commit these offenses, then you must not find—find him not guilty of it. . . ." (Emphasis added.)

The charge on intoxication as given by the court was the following: "Now, while we are talking about intent, I am going to bring up the subject of intoxication as a defense.

"In this case, there has been some evidence of intoxication. I want to read to you Connecticut General Statutes Section 53a-7 concerning intoxication.

" 'Effect of intoxication. Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense, evidence of intoxication of the Defendant may be offered by the Defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, "intoxication" means a substantial disturbance of mental or physical capacity resulting from the introduction of substances into the body.'

"Now, you have, as I explained, murder, attempted murder, two of the elements of manslaughter in the first degree, and intent in it and knowledge is required in the weapons in the motor vehicle charge, as well as two

the "defense" of intoxication became "significant only when it proceeded so far that it affected the operation of the mind to the level that the defendant, was *unable* rationally to consider *any* matter or intelligently harbor any intent" set a substantial threshold to the jury's consideration of intoxication "which he could not even hope to meet." "Fairly construed," he asserts, this por-

of the manslaughters with firearms have an intentional aspect to it. These are to be considered when you are doing your deliberations in light of the intoxication statute.

"Intoxication is a term which is used somewhat loosely in everyday speech. It is not practically presentable to define. We speak of a man being intoxicated when he discloses [in] his speech, his gait, his manner, his thoughts or his general appearance, evidence of having taken intoxicating substances.

"Voluntary intoxication is in itself no excuse for a crime. It becomes significant only when it has proceeded so far that it affected the operation of the mind of the accused and made him incapable for the time being of forming a rational intent or of controlling his will. Its presence to that extent negates the existence of criminal intent. To this extent, our Penal Code states that evidence of intoxication should be considered whenever it is relevant to negate, that is, to cancel out an element of the crime charged.

"As we all know, this condition of intoxication varies in degree, according to the amount and character of the intoxicating substance taken, the lapse of time between its ingestion and the commission of the crime, and other circumstances you may reasonably consider. The law, I caution you, takes no account of differences in personal susceptibility to the effect of toxicants upon different individuals. An individual may show in his behavior the present effect of a toxicant he has taken and yet still may retain his faculties fully enough to reason, to know what he is about and to form and carry out an irrational [sic] intent. It is only when he is so intoxicated that, at the time the crime was committed, he was unable rationally to consider any matter, or intelligently to harbor any intent or to control his activities that intoxication is a defense. If upon the whole evidence you entertain a reasonable doubt whether the condition of the accused was such that he was able still to know what he was about and to form and possess the necessary knowledge or control, re: intent required for the offenses that I am going to instruct you on, then you must give him the benefit of that doubt. Now, if you find he was so intoxicated at the time of the alleged offense that he could not have possessed the required intent or knowledge necessary to commit these offenses, then you must not find—find him not guilty of it. You have to, in reviewing the evidence, the testimony, review the testimony from people who spoke to him, who listened to him, who observed him, from Dr. Stolman's testimony, these are just but a few of the instances I'm giving of an example to consider this particular element."

tion of the charge "could have been perceived by a reasonable jury as an admonition that they ignore as irrelevant, any evidence of intoxication unless and until they were convinced that the degree of [his] intoxication was such that it rendered him utterly senseless, devoid of reason, wholly incapable of performing any rational act or forming any conscious objective at all. . . .''

The state argues that the attack on the intoxication instruction is not reviewable because the defendant failed to take a proper exception to the instruction as given. It maintains that the defendant never excepted at the trial on the basis that the instructions set too high a standard for the level of intoxication necessary to negate intent.

The requirement that the claim made by the exception "be raised 'distinctly' means that it must be 'so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked.' (Emphasis added.) *Woodruff* v. *Butler,* 75 Conn. 679, 682, 55 A. 167 (1903)." *State* v. *Carter,* supra, 396. The general exception actually taken to the charge was inadequate to alert the trial court to the precise deficiency claimed on appeal. Defense counsel simply made no relation between the exception and where the instruction as given was specifically deficient as compared to what he requested. The defendant, however, had made specific exceptions to other portions of the charge at least twice. The purpose of the rule requiring that an exception be taken that distinctly states the objection and the grounds therefor is to alert the court to any claims of error while there is still an opportunity for correction. *State* v. *Callari,* 194 Conn. 18, 25, 478 A.2d 592 (1984), cert. denied, 469 U.S. 1210, 105 S. Ct. 1178, 84 L. Ed. 2d 327 (1985); *State* v. *Miller,* 186 Conn. 654, 657–58, 443 A.2d 906 (1982); see Practice Book §§ 315, 854, 3063.

"The failure of the defendant to state distinctly the matter being objected to immediately after the conclusion of the charge ordinarily renders the claim of error unreviewable on appeal. See Practice Book §§ 854, 3063. In the absence of a specific timely exception, a claim of error is 'reviewable as an exceptional circumstance within the doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), only when the defendant can demonstrate that he has clearly been deprived of a fundamental constitutional right and a fair trial, or under Practice Book § 3063 as plain error.' *State* v. *Preyer,* 198 Conn. 190, 196–97, 502 A.2d 858 (1986)." *State* v. *Carter,* supra, 396. We will, however, in this case, undertake a limited review for the purpose of determining whether there has been an infringement of a fundamental constitutional right. *State* v. *Stevenson,* 198 Conn. 560, 568, 504 A.2d 1029 (1986).

Initially, we observe that the court's reference to intoxication as a "defense" was incorrect. "Intoxication is not a defense to murder, but is relevant to the capacity to form specific intent. General Statutes § 53a-7. . . . " *State* v. *D'Antuono,* 186 Conn. 414, 423, 441 A.2d 846 (1982); *State* v. *Stevenson,* supra, 570; *State* v. *Shine,* 193 Conn. 632, 635 n.4, 479 A.2d 218 (1984). This mistake, however, either in vacuo or in the context of the whole charge including the challenged portion is not harmful error. The implication that this placed some burden on the defendant has no substance when the whole charge is examined. In addition, the court prefaced its charge on intoxication by reading General Statutes § 53a-7 including the portion which states: "Intoxication shall *not* be a defense to a criminal charge, but . . . . " (Emphasis added.) Moreover, at one point in the charge where the court refers to the affirmative defense of extreme emotional disturbance raised by the defendant, the court instructed the jury that "that is the only instance in which the defend-

ant has any burden of proving anything in this case. Otherwise, the state has the burden of proof. Whenever that burden of proof is referred to, it is proof beyond a reasonable doubt." We also point out that our examination of the entire charge demonstrates that the burden was placed on and remained with the state throughout, to prove to the jury that the defendant, in spite of any intoxication, had the capacity to, and did form the specific intent required for the charges of murder and attempted murder.

The argument that the challenged instructions created an unlawful threshold for the jury's consideration of his intoxication lacks merit. The charge on intoxication itself was adequate as a matter of law. The defendant asks us to reconsider our statement in *Stevenson* where we said that the court's charge in that case, which said that "voluntary intoxication was significant only when it had proceeded so far as to have affected the operation of the mind of the accused and made him incapable for the time being of forming a rational intent or of controlling his will," was correct not only in the context of the charge but as a statement of law. *State* v. *Stevenson,* supra, 570. That language also appears in the challenged instructions in this case. We decline the defendant's invitation to reconsider. Our statement in *Stevenson* is equally applicable here.

The defendant, in his unlawful threshold argument, also faults the language that referred to the level of intoxication needed to negate intent, specifically that he be so intoxicated that "he was unable rationally to consider any matter, or intelligently to harbor any intent or to control his activities. . . ." In *Stevenson,* we counselled against the use of this language but conclude here, as we did there, that it did not comprise constitutional error because the remainder of the charge negated any potential for misinterpretation.

*State* v. *Stevenson,* supra, 570–71. In any event, error cannot be predicated "on detached sentences or portions of the court's charge." *State* v. *Malley,* 167 Conn. 379, 382, 355 A.2d 292 (1974). In its intoxication instructions, the court read § 53a-7 to the jury which, inter alia, made clear the legislative determination that "evidence of intoxication of the Defendant may be offered by [him] whenever it is relevant to negate an element of the crime charged . . . " and that the jury was to consider "the whole evidence" in making its determination of the effect of his intoxication or his ability to possess the requisite intent. The statutory definition of "intoxication," together with the charge, gave a clear understanding of the significance of intoxication in the case as well as proper guidance to the jury in its ultimate determination of that issue. Despite the defendant's claim, this was done in language that in context was fair to the defendant. There was no impermissible threshold imposed to a proper jury inquiry here; the language as a whole informed the jurors of their obligation to consider this evidence and left to the jury the factual question of whether the evidence of intoxication did in fact negate the element of intent. It is also important to point out that the instruction in this case, while not fully identical with that in *Stevenson,* contained crucial language that we held there was constitutionally proper.

An examination of other portions of the charge supports our conclusion that the instruction was proper. Mindful that the ultimate question raised by the intoxication was whether the defendant had the requisite intent, we point out that twice during the charge the court gave the Penal Code definition of "intentionally." Intent was crafted meaningfully into the intoxication phase of the charge; on a number of other occasions the court tied intoxication to intent. "In order to prove intent, an essential element of the crimes . . . the

prosecution had the burden of disproving intoxication." *State* v. *Turcio,* 178 Conn. 116, 132, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). Having rejected on numerous occasions the notion that we judge individual instructions in artificial isolation from the overall charge, the issue then "is whether the charge taken as a whole was correct in law and sufficient for the jury." *State* v. *Moye,* 177 Conn. 487, 490–91, 418 A.2d 870, vacated and remanded on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979). The court's instructions satisfied this standard. It follows that the instructions on intoxication did not "implicate any fundamental constitutional right that would afford the defendant review under the exceptional circumstance doctrine of *State* v. *Evans." State* v. *Stevenson,* supra, 572.

There is no error.

In this opinion the other justices concurred.