STATE OF CONNECTICUT *v.* EDWARD NIEVES
(12755)

SCHALLER, SPEAR and HENNESSY, Js.

Argued October 27, 1994—decision released January 10, 1995

*Linda P. Stambovsky,* with whom, on the brief, was *Patricia Buck Wolf,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *John Connelly,* state's attorney, and *Elena Ricci* and *Robin Lipsky,* assistant state's attorneys, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sale of a narcotic substance in violation of General Statutes § 21a-277 (a).[1] The defendant claims that the trial court (1) improperly refused to give a separate instruction on testimony by police officers, (2) allowed an improper

---

[1] General Statutes § 21a-277 provides in pertinent part: "(a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

in-court demonstration, (3) permitted the prosecutor to engage in misconduct during the trial and closing argument, and (4) improperly denied the motion for judgment of acquittal, which the defendant based on insufficient evidence of his identity. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 24, 1992, police officers Michael DiMaria and Randy Velez of the tactical narcotics team of the Waterbury police department were on a stakeout. At approximately 4 p.m. in front of 18 West Liberty Street in Waterbury, the officers witnessed the defendant and Javier Roman exchange money for two small plastic vials. Later, these vials were found to contain "crack" cocaine.

Immediately after witnessing the exchange, the officers followed and apprehended Roman, the buyer, on River Street. Two other officers, Michael Ricci and John Kennelly, joined DiMaria and Velez in search of the defendant. Velez and Ricci proceeded to scan the area in a police car. During their search, they spotted the defendant, a Hispanic male wearing grey sweatpants, a blue coat and a baseball cap, on West Liberty Street. The officers immediately apprehended the defendant and waited for DiMaria and Kennelly to arrive. When DiMaria arrived, he confirmed that this was the Hispanic man whom he had observed earlier handing Roman a small object in exchange for money. The officers found a beeper and $370 in the defendant's possession. The defendant was arrested and taken into police custody.

At trial, the state called six Waterbury police officers and a toxicologist from the Connecticut department of health. The toxicologist and one officer testified as expert witnesses. The defendant presented the tes-

timony of two witnesses, William Deming and Rosalie Nieves, the defendant's mother, in addition to his own testimony.

I

The defendant claims that the trial court improperly refused to give the jury a separate instruction on testimony by police officers. We do not agree.

At the close of the evidence, the defendant filed a request to charge on police testimony. The relevant portion of the requested instruction is as follows: "As you will remember there was testimony here from police officers. The testimony of a police officer is entitled to no special or exclusive sanctity merely because it comes from a police officer. A police officer who takes the witness stand subjects his testimony to the same examination and the same tests that any other witness does. And in cases of police officers, you should not believe them merely because they are police officers. You should recall their demeanor here on the stand, consider the training, if any, in the field in which they gave evidence, their manner of testimony, the substance of their testimony, their capacity for observing facts and relating them to you accurately. And you should weigh and balance that testimony just as carefully as you would weigh the testimony of any other witness." This instruction is routinely given in criminal cases involving police testimony. See 5 Connecticut Practice, D. Borden & L. Orland, Criminal Jury Instructions (1986) § 3.11, p. 94.

The court, however, did not charge separately on police testimony as requested by the defendant. Instead, the court combined that instruction with instructions on several types of witnesses. In the general portion of its instruction, the trial court directed the jury to consider each witness' appearance, inter-

ests, and ability to relate the facts accurately and truthfully. Regarding police officers, the court charged as follows: "Now there were some witnesses who testified here, a doctor, toxicologist, the police expert, and police officers. The testimony of such witnesses is entitled to no special or exclusive sanctity merely because of their occupation. Each witness subjects his testimony to the same examination, the same test as other witnesses that you've heard during this trial. . . . The mere fact that a witness is of a particular occupation should not mitigate for or against that witness' credibility. It's entirely up to you whether you credit their testimony and their expertise, bearing in mind the instructions I have given you concerning sizing up witnesses on the stand."

The defendant claims that because the instruction on police officers was combined with the instructions on other types of witnesses, i.e., the toxicologist and the police expert, the charge failed to caution the jury adequately not to grant the police officers special and exclusive sanctity merely because of their status as police officers, thereby denying him a fair trial.

Practice Book § 852 requires that the defendant either file a written request to charge or take exception to the charge as given to preserve the issue for appeal. There is no dispute that the defendant satisfied the requirements set forth in § 852. The defendant both filed a written request to charge and took exception to the charge given at trial.

The trial court is under no duty to charge the jury in the exact language requested by the defendant as long as its instructions are adapted to the issues involved in the case and are sufficient for the guidance of the jury. *Coble* v. *Maloney*, 34 Conn. App. 655, 672, 642 A.2d 277 (1994); see also *State* v. *Harrell*, 199 Conn. 255, 268–71, 506 A.2d 1041 (1986); *State* v.

*Frazier*, 7 Conn. App. 27, 37 n.3, 507 A.2d 509 (1986). It is well established that a refusal to charge in the exact words requested will not constitute error if the substance of the requested charge is given. *State* v. *Arena*, 33 Conn. App. 468, 488–89, 636 A.2d 398, cert. granted, 229 Conn. 918, 644 A.2d 914 (1994). The test is whether the charge as given, when compared to the charge requested, is comparable in its probable effect on jurors in guiding them to a correct verdict on the case. *State* v. *Dickerson*, 28 Conn. App. 290, 293–94, 612 A.2d 769 (1992).

In the present case, reviewing the charge as a whole, we cannot say the instruction given was improper. The court was careful to instruct the jury that the testimony of the police officers, toxicologist, and expert police witness was to be weighed and balanced as carefully as that of any other witnesses. While it is preferable to give appropriate emphasis to the instruction on police testimony by devoting a separate instruction to that subject, we cannot say that in this case the charge was deficient merely because it was not given separately.

## II

The defendant next claims that the court abused its discretion in allowing DiMaria to demonstrate in court the manner in which the buyer allegedly handed money to the defendant in the course of the transaction. We do not agree.

Further facts are necessary to resolve this issue. At trial, the state asked DiMaria to perform an in-court demonstration of a transfer of currency that he testified he had observed between Roman and the defendant. The defendant objected to this demonstration claiming that, because of the inconsistencies in distance and conditions, the in-court demonstration would be so dissimilar to the original alleged transaction that it would be highly prejudicial and misleading. The trial

court overruled the objection, but indicated to the defendant that it would instruct the jury that the demonstration was not being offered to show the distance between DiMaria's position and the location of the transaction. Specifically, counsel for the defendant insisted that "I would like to ask for an instruction to the jury that this is dissimilar . . . . I think it's prejudicial and misleading." The court responded, after confirming with the prosecutor that she was "not offering [the demonstration to prove] that the distance is the same" that "I'll tell the jury that." After observing the demonstration outside of the jury's presence, the court allowed the demonstration to be repeated in the jury's presence. The court gave no limiting instruction at that time, nor did the defendant request any such instruction.

In the jury charge, the court did not refer to the in-court demonstration of DiMaria. At the close of jury instructions, the court asked either party if they had any exceptions to the charge as given. Counsel for the defendant said, "I have no exceptions . . . except that I would request that you read the proper charge on police testimony that was given in the defendant's request to charge." Further, counsel for the defendant did not submit any written request to the court for a charge on the in-court demonstration.

Although the court neglected to instruct the jury on the in-court demonstration as it indicated it would, the defendant failed both to file a written request to charge on the issue and to take an exception at the close of jury instructions.

"Practice Book § 852 requires that a party either file a written request to charge or take exception to the charge as given in order to preserve the issue for appeal." *State* v. *Jackson,* 34 Conn. App. 599, 603–604, 642 A.2d 1223, cert. granted, 231 Conn. 917, 648 A.2d

165 (1994). In *State* v. *Ramirez*, 16 Conn. App. 284, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988), we stated that we were not persuaded by the defendant's claim that an in-court discussion of whether a charge was warranted, held immediately before the jury charge, was an acceptable alternative to the requirements of the rules of practice. We reasoned that the purpose of § 852 is not well served by oral argument alone since the court is pressured to make an immediate decision on the issue without the benefit of time and effort spent scrutinizing the relevant law on the issue. Our Supreme Court has held that "[t]he failure of the defendant to state distinctly the matter being objected to immediately after the conclusion of the charge ordinarily renders the claim of error unreviewable on appeal." *State* v. *Utz*, 201 Conn. 190, 208, 513 A.2d 1191 (1986).

We conclude that the failure of the defendant to file a written request to charge and to take exception to the charge as given renders this issue unpreserved for appeal. Accordingly, we decline to review this claim.

### III

The defendant next claims that the state engaged in misconduct during the trial and the closing argument, thereby violating his right to a fair trial. This claim is without merit.

The defendant claims that the state presented a misleading demonstration, asked misleading questions based on false information, influenced a witness called by the state to change his testimony and, in its closing argument, argued a new theory of guilt unsupported by the evidence.

The threshold issue is whether the claim is reviewable. The defendant did not properly preserve this claim for appellate review. The defendant argues, however,

that although no objection was made at the time of the closing argument, it was sufficient that he presented the objection to the trial court in his second motion for judgment of acquittal.

Our Supreme Court has held that the failure of counsel for the defendant to take exception to remarks of the state's attorney either at the time they were made or at the close of the state's attorney's argument was a waiver of the right of the accused to press this claim as error. *State* v. *Lubesky*, 195 Conn. 475, 484, 488 A.2d 1239 (1985). Section 4185 of the Practice Book provides in relevant part that we are not "bound to consider a claim unless it was distinctly raised at trial . . . ." We have noted that "[t]he purpose of the rule requiring that an exception be taken that distinctly states the objection and the grounds therefor is to alert the court to any claims of error while there is still an opportunity for correction." *State* v. *Utz*, supra, 201 Conn. 207.

Because the defendant failed to make a timely objection to the challenged remarks and misconduct, he seeks review under *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Our review of the record discloses that the remarks and conduct now challenged were isolated instances of alleged misconduct, unrepresentative of a pattern of conduct repeated throughout the trial. Under those circumstances, it is appropriate that we decline to review their propriety. *State* v. *Castonguay*, 218 Conn. 486, 507–508, 590 A.2d 901 (1991); see *State* v. *Williams*, 204 Conn. 523, 537, 529 A.2d 653 (1987).

## IV

The defendant's remaining claim challenges the trial court's denial of the defendant's motion for judgment of acquittal in which the defendant challenged the sufficiency of the identification evidence. The defendant

claims that there was insufficient evidence to support his conviction because the record does not contain proof beyond a reasonable doubt of his identity as the man who sold Roman the narcotics. We disagree.

"In reviewing a sufficiency claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993).

In this case, on the basis of the evidence and the inferences reasonably drawn therefrom, the jury could have concluded beyond a reasonable doubt that the defendant was the man who sold Roman the narcotics. DiMaria was the only witness who testified that he observed the defendant engaging in the sale of narcotics. Although DiMaria viewed the defendant for only a few minutes and from a considerable distance, he did have an unobstructed view both when the defendant and Roman first met, and when the exchange took place. When he arrived at the location where the defendant was being detained by other officers, DiMaria immediately identified the defendant as the person who had sold the narcotics to Roman. The United States Supreme Court, in discussing a challenge to an identification made by an undercover narcotics officer, said that "as a specifically trained, assigned, and experienced officer, he could be expected to pay scrupulous attention to detail, for he knew that subsequently he would have to find and arrest his vendor. In addition, he knew that his claimed observations would be subject later to close scrutiny and examination at any trial." *Manson* v. *Brathwaite*, 432 U.S. 98,

115, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). Although DiMaria was an observer rather than a buyer, the same rationale would apply.[2]

We conclude that there was sufficient evidence of identification for the jury to have concluded beyond a reasonable doubt that the defendant was the person who sold the narcotics to Roman.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] There was evidence that DiMaria had special training in the vice squad and special classes in identification of narcotics and that, in undercover work, he had made more than 700 narcotic arrests.