## STATE OF CONNECTICUT *v.* RONALD HUFF
## (3579)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued December 2, 1986—decision released March 31, 1987

*Timothy H. Everett,* with whom, on the brief, was *Anthony Ghecas,* legal intern, for the appellant (defendant).

*Susan C. Marks,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Dennis O'Connor,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of robbery in the first degree in violation of General Statutes §§ 53a-133 and 53a-134 (a) (3),[1] and of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[2] He raises three claims of error: (1) that the trial court's instructions to the jury were constitutionally deficient because, in defining the statutory term "dangerous instrument," the court omitted the statutory definition of "serious physical injury"; (2) that the court erred in sustaining two objections by the state to the defendant's final argument; and (3) that the court abused its discretion in denying the defendant's motions to strike and for a one week continuance, which were made in response to the state's filing of a substituted information immediately prior to the commencement of the jury voir dire. We find no error.

[1] General Statutes § 53a-134 (a) (3) provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime [of robbery, defined in General Statutes § 53a-133] or of immediate flight therefrom, he . . . (3) uses or threatens the use of a dangerous instrument . . . ."

General Statutes § 53a-3 (7) provides in pertinent part: " 'Dangerous instrument' means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

General Statutes § 53a-3 (4) provides: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

General Statutes § 53a-3 (3) provides as: " 'Physical injury' means impairment of physical condition or pain."

[2] General Statutes § 53a-60 (a) (2) provides in pertinent part: "(a) A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person . . . by means of a . . . dangerous instrument . . . ."

On August 30, 1983, at approximately 11:30 p.m. the victim, Michael Knowles, was assaulted and robbed on a Hartford street by three men. Knowles testified that one of the men hit him with a miniature wooden baseball bat approximately sixteen inches long and two and one-half inches in diameter, more than three times on the left side of his head, causing him to black out, to "see stars," and to feel that he was hurt. Knowles went to a hospital emergency room for treatment. The police officer who saw him there testified that his face was swollen and that his head and chest were bruised. On two subsequent occasions Knowles was shown police photo arrays containing photographs of the defendant, but did not identify the defendant.

Approximately three months later, on December 7, 1983, Knowles was in a restaurant in Hartford, when he recognized the defendant, who was sitting at a table, as the assailant who had hit him with the baseball bat. In order to observe the defendant closely, Knowles approached him on a pretense and asked him a question. Knowles then left the restaurant and called the police, who arrived a few minutes later and arrested the defendant inside the restaurant.

I

The defendant first claims that the trial court erred by omitting the statutory definition of "serious physical injury"; see footnote 1, supra; from its jury charge on the offenses of robbery in the first degree and assault in the second degree. Both offenses require the state to prove, as an essential element, that the defendant used a "dangerous instrument." See footnotes 1 and 2, supra. "Dangerous instrument" is statutorily defined as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury. . . ." General

Statutes § 53a-3 (7); see footnote 1, supra. "Serious physical injury" is further defined as "physical injury [defined in General Statutes § 53a-3 (3); see footnote 1, supra;] which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss of impairment of the function of any bodily organ." General Statutes § 53a-3 (4); see footnote 1, supra.

In instructing the jury on the offense of robbery in the first degree, the court read the applicable portion of the statutory definition of "dangerous instrument." It is the failure, however, of the trial court to instruct the jury on the statutory definition of "serious physical injury" which is claimed as error on appeal.[3] The defendant claims that this failure amounted to an omission of a jury charge on an essential element of the crime charged.

Because the defendant neither filed a request to charge nor excepted to the charge as given, he seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and under the plain error doctrine. We have recently clarified our formulation for an *Evans* review.

"We 'must ask a series of questions when an *Evans* claim is made and answer each in the affirmative before continuing to the succeeding question.' *State* v. *Newton,* 8 Conn. App. 528, 531, 513 A.2d 1261 (1986). 'The first two questions relate to whether a defendant's claim is

---

[3] In instructing the jury on the offense of assault in the second degree, the court three times referred to the term "dangerous instrument," which it had already defined for the jury in its charge on robbery, but did not repeat the definition or specifically direct the jury to incorporate the definition into its deliberations on the assault charge. The defendant, although noting this omission in his brief, does not claim it as reversible error on the assault charge. His claim is that, as to both the robbery and assault charges, the court committed an error of fundamental constitutional dimension by omitting the statutory definition of "serious physical injury."

reviewable, and the last two relate to the substance of the actual review.' Id.

"First, does the defendant raise an issue which, by its terms, implicates a fundamental constitutional right? This question looks solely to whether the label which the defendant places on the claim is constitutional in nature.

"Second, is the defendant's constitutional claim adequately supported by the record? This question requires that we review the record in a *limited* way and determine, on the basis of that limited review, whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant. In those instances in which the Supreme Court or this court has already clearly indicated that the particular claim is or is not of constitutional proportions and therefore reviewable or not reviewable, a summary "yes" or "no" answer may be sufficient.

"Third, 'was there, in fact, based on the record, a deprivation of a constitutional right of a criminal defendant'? *State* v. *Newton,* supra. This question requires that we *fully* review the defendant's claim to determine whether a fundamental constitutional right of his was violated.

"Fourth, 'did the deprivation deny the defendant a fair trial, thereby requiring' that his conviction be set aside. Id. This question requires that we determine, under appropriate standards of harmless error or other similar doctrines, whether the error requires reversal." (Emphasis in original.) *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891 (1987).

The defendant, by claiming that the court's failure to define "serious physical injury" amounted to an omission of an instruction on an essential element of the crime charged, has satisfied the first requirement

for *Evans* review. See *State* v. *Newton,* supra, 539; *State* v. *Grant,* 6 Conn. App. 24, 28, 502 A.2d 945 (1986). Our limited review of the record discloses, however, that the defendant's claim is not truly of constitutional proportions, but is simply characterized as such by him. Thus, he has failed to satisfy the second requirement for *Evans* review because his constitutional claim is not adequately supported by the record. *State* v. *Thurman,* supra.

The court read the jury the statutory definition of the essential element of the crime charged, namely use of a "dangerous instrument." "Serious physical injury," is not itself, however, an essential element of the crime charged. It is but a definitional component of an essential element. A court's failure to read the statutory definition of a phrase which itself appears as part of the definition of an essential element, is not an error of constitutional proportion. The court's obligation to charge on the essential elements of the crime charged " 'does not transform every deviation from the particular statutory definition chosen by the legislature into a constitutional error.' " *State* v. *Utz,* 201 Conn. 190, 202, 513 A.2d 1191 (1986). The defendant has attached a constitutional label to what is analytically, at its core, a nonconstitutional claim. Id. We therefore decline to review this claim further.

Indeed, three related circumstances of this case make the defendant's claim particularly inappropriate for the exercise of our "principled appellate discretion." *State* v. *Cosby,* 6 Conn. App. 164, 172, 504 A.2d 1071 (1986). First, the defendant made it clear to the trial court that he did not dispute the fact that the miniature baseball bat, as it was used in the incident, was a dangerous instrument. Defense counsel, in fact, argued as a subsidiary support for certain legal arguments at trial that

there was no dispute over this issue.[4] It befuddles both sound judicial policy and common sense to permit the defendant on appeal to raise as error a position which he pressed on the trial court for his own benefit. See *State* v. *Drakeford,* 202 Conn. 75, 81, 519 A.2d 1194 (1987) (defendant cannot pursue one issue at trial and claim on appeal that that course he rejected at trial be open to him).

Second, the defendant displayed decided indifference to any definitional nuances in the court's charge. When the trial court did not, in its initial instructions to the jury on the charge of assault in the second degree, define the statutory term "physical injury"; see General Statutes § 53a-3 (3); footnote 1, supra; the state excepted to this omission. The court asked defense counsel if he wished to be heard in response to the state's exception, and the following colloquy took place: "Defense Counsel: 'Not on that specific point. . . .'

---

[4] Defense counsel took strong exception to the trial court's sua sponte charge to the jury on assault in the third degree; General Statutes § 53a-61 (a) (1); as a lesser included offense of assault in the second degree; General Statutes § 53a-60 (a) (2); and robbery in the second and third degrees; General Statutes §§ 53a-135 (1) (2) and 53a-136 (a); as lesser included offenses of robbery in the first degree. General Statutes § 53a-134 (a) (3). He claimed that the element that differentiated the greater offenses from the lesser offenses, namely, the existence of a dangerous instrument, was not in dispute.

Defense counsel stated: "There is absolutely nothing in this trial that was put into evidence that either disputes or puts into question the presence of a baseball bat on August 30, 1983. The Defendant has put on his defense totally to attack the identity there. That is, it is not he who was present. *There's no evidence to contest the presence of this danger[ous] instrument.*"

\* \* \*

"There's absolutely nothing in evidence where the defense or either side claim that there was not a dangerous instrument or what they might find to be a dangerous instrument a 16 inch baseball bat present." (Emphasis added.)

Defense counsel later stated: "I would suggest that the sufficiency in dispute element both as to robbery and assault, there's absolutely nothing in this case that is in dispute concerning the element or elements that differentiates one crime from the other."

The Court: 'Specifically I did not define it. If you wish, I will. Counsel, do you want me to give the statutory definition of physical injury?' Defense Counsel: 'I have no position on that, Your Honor.' " Thereafter, the court recalled the jury and instructed it on the statutory definition of "physical injury."

This revealing exchange indicates that, had the trial court been alerted to its omission of the statutory definition of "serious physical injury," it very likely would have promptly given a supplemental charge supplying the jury with the omitted definition. "An exception at this point, especially under the circumstances of this case, would have served the important function of alerting the trial court to what defense counsel believed was erroneous while there was time to correct it without ordering a retrial." *State* v. *Cobb*, 199 Conn. 322, 329, 507 A.2d 457 (1986). Under the circumstances of this case, we will not permit the defendant to remain silent until it is too late for the trial court even to consider his claim and then, after an unsatisfactory outcome, make the claim for the first time on appeal. *State* v. *Tyler-Barcomb*, 197 Conn. 666, 672, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986); *State* v. *Evans*, supra, 66.

Third, a review of the trial transcript and of the final arguments of both the state and defendant discloses with sunshine clarity that the only contested issue in the case was the identity of the defendant.[5] As already

[5] As an example of trial counsels' view of the issues, the assistant state's attorney stated, near the beginning of his opening argument, as follows: 'This is what's known as an identification case." In his final argument, the defense counsel agreed: "Now, I will certainly agree with the State's Attorney that this is a case that boils down to identity. The identity of the person who had a miniature baseball bat on August 30, 1983. That Michael Knowles claim[s] struck him and make [sic] him see stars as he says." In taking his exception to the court's sua sponte charge on lesser included offenses, defense counsel stated: "The defendant has put on his defense totally to attack the identity there. That is, it is not he who was present."

pointed out, there was no dispute over whether the miniature baseball bat, in the manner in which it was used, was a dangerous instrument. Under these circumstances, it is difficult to ascertain how the court's failure to define "serious physical injury" is an error of constitutional proportion.

Where counsel, as in this case, seeks to raise on appeal a potential defect in the jury charge which he did not raise at trial, his silence at trial is a powerful signal that, because of the posture of the case, he did not hear the defect in the harmful manner which he presses on appeal, or even if he did so hear it, he did not deem it harmful enough to press in the trial court.[6] When the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial; *State* v. *Cosby,* supra; is seriously undercut. See also *State* v. *Kurvin,* 186 Conn. 555, 567 442 A.2d 1327 (1982) ("We cannot ignore the fact that the defendant saw no reason to take exception to an instruction which he now claims is misleading").

Under the circumstances of this case, therefore, we decline to review the defendant's claim further under *Evans.* To do so would turn this appeal into a "Kafkaesque academic test which [the trial judge] may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him." *State* v. *Cosby,* supra, 174.

---

[6] We recognize that the silence may also simply reflect inadvertence by counsel. That possibility alone is not enough to warrant appellate review. The policies behind the rule requiring claims to be raised at trial are strong and sound. See *State* v. *Cosby,* 6 Conn. App. 164, 173, 504 A.2d 1071 (1986). Furthermore, due process requires a fair trial, not a perfect one. *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982).

We also decline the defendant's invitation to review this claim under the plain error doctrine. Suffice it to say that, under the facts of this case, the omission of the statutory definition of "serious physical injury" from the jury instructions does not constitute a manifest injustice to the defendant so as to impair the effectiveness and integrity of the trial. *State* v. *Utz,* supra. It neither vitiated the fundamental integrity of the adjudicative process nor worked a fundamental injustice. *State* v. *Cosby,* supra, 172.

## II

The defendant next claims that the court abused its discretion by sustaining the state's objections to two portions of the defendant's final argument. In final argument, defense counsel argued that the defendant's failure to leave the restaurant after being confronted by Knowles indicated a consciousness of innocence on his part. The court sustained two objections by the state that the argument assumed facts not in evidence, and overruled one such objection.[7]

[7] The transcript discloses the following:

"Defense Counsel: [L]et's remember what Ronald Huff and Ronald Huff was most certainly the man who was sitting in the Municipal Cafeteria on December 7th, at 11 o'clock in the morning. Let's consider what he was doing during all this time. Well, there was testimony that he was sitting in a booth with another male, drinking coffee or eating or something like that when Michael Knowles first approached him. And apparently he's doing the same thing when Officer Doyal came in and placed him under, placed him in custody, under arrest.

"I think that you're entitled to consider actions, activity, of the accused as to whether or not these are the actions of an innocent or a guilty person. Because if the state is claiming to you, and this is in essence what they're claiming, there's no way around this for the state. They're claiming that the person perhaps not blessed with perfect eyesight at 11:30 at night, with a quick wink, quick glance of a person, under those conditions is able to, more than three months later, identify, if that is the case, would not a person who was the perpetrator, who was the robber likewise identify the person that they robbed?

"The State: I object to that, Your Honor. It's assuming facts not in evidence. It's something I can't respond to.

The defendant claims on appeal that, just as flight may be considered a basis for an inference of consciousness of guilt; *State* v. *Allen,* 9 Conn. App. 169, 181, 517 A.2d 1043 (1986), cert. granted, 203 Conn. 801, 522 A.2d 292 (1987); the defendant's failure to flee was a legitimate argument as a basis on which the jury could draw an inference of innocence. The gist of the defendant's claim is that by precluding him from arguing to the jury the critical inference that flows from his failure to flee, namely, his failure to recognize Knowles, the trial judge prevented him from calling into question the victim's identification of the defendant three months earlier. Precluding this inference, he claims, was an abuse of discretion and an abridgement of his constitutional right to present final argument. Under the circumstances of this case, we disagree.

Counsel may comment upon facts properly in evidence and upon *reasonable* inferences to be drawn from them. *State* v. *Kinsey,* 173 Conn. 344, 348, 377 A.2d

"The Court: That's correct. The jury will disregard that statement.

"Defense Counsel: You heard testimony that there was a one on one confrontation. A sighting between Ronald Huff and Mr. Knowles. I want you to consider what Ronald Huff did. Did he leave the Municipal Cafeteria?

"The State: I again, Your Honor—

"Defense Counsel: I would claim it, Your Honor. This is very much in evidence. I would claim it.

"The Court: I'll allow this line of argument, Mr. Carlson.

"The State: Yes, Your Honor.

"Defense Counsel: Did he leave the Municipal Cafeteria? He apparently, from the testimony that you've heard about the conversation and I believe that Mr. Knowles testimony was, I went up to him and I wanted to get a close look at him. I went up to him and I asked him if he knew where so and so was. Mr. Huff apparently did not leave the premises. He was there drinking coffee or whatever the testimony was, what he was doing. At a point later in time Officer Doyal comes in and he arrests him. I think you should consider whether or not that is the activity of a person with consciousness of guilt?

"The State: I object to that, Your Honor.

"The Court: That objection is sustained. The jury will disregard the last statement."

1095 (1977). Counsel may not, however, comment on or suggest an inference from facts not in evidence. *State* v. *Manley,* 195 Conn. 567, 580, 489 A.2d 1024 (1985). In general, the scope of final argument lies within the sound discretion of the court; *Schwarz* v. *Waterbury Public Market, Inc.,* 6 Conn. App. 429, 437, 505 A.2d 1272 (1986); subject to appropriate constitutional limitations. *Herring* v. *New York,* 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975) (complete denial of right to argue violates sixth amendment).

We first note that the defendant did not take the witness stand, and thus there was no direct evidence with respect to his recognition or nonrecognition of Knowles. The defendant's failure to flee when Knowles approached him, however, was a fact in evidence. Only if an inference of consciousness of innocence *reasonably* flows from this fact would defense counsel be entitled to argue as he attempted to do. *State* v. *Kinsey,* supra. If such an inference is unreasonable, it would be within the trial court's discretion to instruct the jury to disregard that part of trial counsel's closing argument inviting the jury to draw the inference. In the present case, the inference of consciousness of innocence does not reasonably flow from the defendant's failure to flee. The defendant's argument founders on the assumptions underlying it.

The trial court excluded that part of the defendant's closing argument where defense counsel attempted to persuade the jury that the defendant's failure to flee after being confronted by Knowles would support the inference that the defendant was not the person who had robbed and assaulted Knowles with the baseball bat. This argument rests on the assumption that if Knowles' recognition of him was accurate, then the jury could infer that the defendant must also have recognized Knowles. Therefore, the argument implicitly continues, had the defendant recognized Knowles, the

defendant as a guilty person would have fled. Conversely, the argument is, because the defendant did *not* flee he must *not* have recognized Knowles, therefore Knowles' identification of him as the assailant must have been mistaken, and therefore he was innocent of the charges against him. The underlying assumption, therefore, of the defendant's argument is that the defendant, confronted face to face with someone whom he is claimed to have robbed and assaulted three months earlier, did *not* recognize that victim.

The critical flaw in this argument is the proposition that Knowles' recognition of the defendant served as a basis for the jury to infer, without further evidence, that the defendant, had he been Knowles' assailant, would have recognized Knowles. The fact that Knowles claimed to have recognized the defendant from a past encounter does not, however, permit an inference, in the absence of other evidence, that the defendant either did or did not recognize Knowles. An act of recognition is subjective in nature, dependent on factors peculiarly perceived by an individual and somehow preserved in his memory. Certain features may become fixed in the mind of the observing person which are later triggered at the moment of recognition. The fact of recognition on one side does not logically give rise to a reasonable inference of recognition or lack thereof on the other. Knowles testified that he recognized the defendant, principally by the defendant's "physical look" and a "gray patch of hair." The defendant's "physical look" and "gray patch of hair" were mental images in Knowles' mind which he correlated with the person he saw in the restaurant.

There was no corresponding testimony from the defendant, however, that he did *not* recognize Knowles. As we have indicated, testimony by the defendant that he did *not* recognize Knowles was a necessary predicate for an inference that the defendant's failure to flee

was a sign of his innocence. In the absence of such testimony, the jury would have been placed in the realm of speculation, not reasonable inference, by the defendant's final argument.

We point out further that defense counsel's argument placed the state in a Catch-22 situation. Before the state's final closing argument, it requested that the jury be excused so that it could obtain some guidance from the court as to how far it could properly go in responding to that part of the defendant's final argument which had been permitted, without running afoul of the prohibition against commenting on a defendant's failure to testify. *State* v. *Allen,* supra, 178. The state's only rebuttal to defense counsel's argument, namely, to point out the absence of evidence on the issue of recognition, might have implicated the defendant's right not to testify, since the defendant would be the natural person to supply the missing evidence. Id., 179. The defendant cannot have his constitutional cake and eat it too. He cannot exercise his constitutional right not to testify and, at the same time, ask the jury to draw an inference of innocence supportable solely by testimony which only he could have given. See *United States ex rel. Leak* v. *Follette,* 418 F.2d 1266, 1268 (2d Cir. 1969), cert. denied, 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665 (1970) (accused who invokes constitutional privilege not to testify may not "impose on the prosecution shackles that would be unavailable to a man who testifies in his own defense").

Finally, we point out that the defendant's reliance on *State* v. *Timmons,* 7 Conn. App. 457, 509 A.2d 64, cert. granted, 201 Conn. 802, 513 A.2d 697 (1986), is misplaced. In that case there was evidence that the defendant, after hiding out for several days following the crime, surrendered to the police. Id., 458. In the course of rejecting his claim that the trial court should have instructed the jury that they could infer innocence

from his surrender; id., 465; we stated in dictum: "The surrender of an accused is a factual argument that may properly be made to a jury in summation of the evidence." Id., 466. In that case, there was evidence of the defendant's surrender from which, arguably, the jury could draw an inference of innocence. In this case, however, there was no testimony from the defendant that he did not recognize Knowles, and there was no evidence from which the jury could infer that he did not recognize Knowles. Thus, there was no evidence from which to draw an inference of innocence.

## III

The defendant's final claim of error involves the filing of a substitute information, immediately before trial, which added the count of assault in the second degree to the original count of robbery in the first degree.[8] The defendant moved to strike the added count and, alternatively, for a one week continuance. The court, *Wagner, J.*, denied the defendant's motions.

The defendant claims that these denials were error because he was left with insufficient time to investigate and prepare for the additional count. We disagree.

The first information, dated January 10, 1984, was a short form document which stated no more than that the defendant committed robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), at Hartford on or about August 30, 1983. On May 21, 1984, immediately prior to the jury voir dire, the state filed a substituted, short form information which added the charge of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), at Hartford on or about August 30, 1983.

---

[8] The substitute information also added a count of carrying a dangerous weapon, but the state subsequently dropped this count and it is not involved in this appeal.

After the court denied the defendant's motions, the state acquiesced in the defendant's request for a long form information. The stated reason for the defendant's request was to minimize confusion by the jury. The defendant agreed that the new information could be filed by the time the jury was sworn. On May 22, 1984, the state filed a long form, substituted information in two counts. The first count recited the facts of the robbery charge, and the second count recited essentially the same facts as the basis for the assault charge.

We first consider the denial of the defendant's motion to strike. We recently decided "that for purposes of Practice Book §§ 623 and 624, a criminal trial begins with the voir dire of the prospective jurors." *State* v. *Cole,* 8 Conn. App. 545, 551–52, 513 A.2d 752 (1986). The court's action in this case, therefore, must be measured against Practice Book § 623, which provides: "If the trial has not commenced, the prosecuting authority, may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority in his discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced." The defendant's argument focuses on that part of Practice Book § 623 which permits the court to strike the added count if "substantive rights of the defendant would be prejudiced."

"A prosecutor has broad authority to amend an information prior to the commencement of the trial. Practice Book § 623." *State* v. *Cole,* supra, 550. That authority is, however, subject to the authority of the court to strike an additional count if that count would prejudice the defendant's substantive rights. In this case, the court was well within its authority in denying the defendant's motion to strike.

The additional count relied on the same factual matrix as the first count. The defendant had not moved earlier for a bill of particulars to supplement the original, short form information; he was able to prepare sufficiently for the trial based on that information because, as the record discloses, he had access to the police reports in the state's attorney's file. His request for a long form information was not motivated by a need for more information for himself, but to minimize jury confusion during its deliberations. Furthermore, as became abundantly clear during the trial, the defendant's sole defense was mistaken identity. "The defendant did not dispute the commission of the crime charged, he simply claimed that he was not the one who committed it." *State* v. *Wallace,* 181 Conn. 237, 239, 435 A.2d 20 (1980). The defendant suggested in the trial court and in this court that he was prejudiced because he was denied adequate time to investigate whether he had defenses to the additional charge. He failed in both courts, however, to suggest at all what those defenses might be. Since the defendant's sole defense was identity, no substantive rights of his were prejudiced by the denial of his motion to strike. Id.

Nor did the trial court abuse its broad discretion in denying the defendant's motion for a continuance. Such a decision is within the court's sound discretion and will not be disturbed absence a clear abuse of that discretion. *State* v. *Stanley,* 197 Conn. 309, 312, 497 A.2d 46 (1985). In order for an appellate court to find an abuse of discretion in the denial of a continuance, " ' "it must be shown that the trial judge acted arbitrarily and substantially impaired the defendant's ability to defend himself . . . ." ' " Id., quoting *State* v. *Marra,* 195 Conn. 421, 437–38, 489 A.2d 350 (1985). The same factors which support the court's denial of the defendant's motion to strike support its denial of the motion for a continuance. Furthermore, the record discloses that

the presentation of evidence did not begin until May 23, 1984, two days after the denial of the defendant's motion for a continuance.

There is no error.

In this opinion the other judges concurred.