STATE OF CONNECTICUT *v.* DANA JOHNSTON
(6314)
(6389)

O'CONNELL, STOUGHTON and NORCOTT, Js.

Argued October 18—decision released December 27, 1988

*John S. Pinney,* with whom, on the brief, was *Thomas E. Gaffey,* for the appellant (defendant).

*John O'Meara,* deputy assistant state's attorney, with whom, on the brief, was *Thomas J. Prior,* assistant state's attorney, for the appellee (state).

NORCOTT, J. This is a consolidated appeal by the defendant from both a judgment of conviction of assault in the second degree in violation of General Statutes § 53a-60 (a) (2),[1] and the subsequent revocation of his probation.

The defendant first claims that the trial court, *T. Sullivan, J.,* erred in instructing the jury on the crime of assault in the second degree, and second that the trial court, *Shaughnessy, J.,* erred in its canvass of the defendant prior to the revocation of his probation. We find no error.

I

As to the first claim, the jury could reasonably have found the following facts. On October 17, 1986, at approximately 4:30 p.m., the victim was leaving the YMCA in Hartford. A man, later identified by the victim as the defendant, asked him for money. They exchanged words and the defendant followed the victim out of the building. Hearing footsteps behind him, the victim started to turn around and was struck on the head by an object that he later described as a brown paper bag containing what he assumed was a bottle. While chasing his assailant, the victim discovered that his head was bleeding, and he returned to the YMCA to seek medical attention. He was taken to a hospital where he received stitches for a head wound. On the

---

[1] General Statutes § 53a-60 provides in pertinent part: "(a) A person is guilty of assault in the second degree when: . . . (2) with intent to cause physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument . . . ."

basis of the victim's description of his assailant, the police apprehended the defendant, brought him to the hospital where he was positively identified by the victim and placed him under arrest.

The defendant claims that the trial court erred in its instruction to the jury on the elements of the crime of assault in the second degree by incorrectly defining the term "serious physical injury" as it relates to the definition of a dangerous instrument. Although the defendant did not take an exception to the charge as given, he claims that because the error diluted the state's burden of proof as to an element of the crime charged, the error is of constitutional dimension and therefore reviewable under the doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

Despite the defendant's contention to the contrary, we find that *State* v. *Huff,* 10 Conn. App. 330, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987), controls the outcome of this issue. In *Huff,* this court declined to give *Evans* review to the issue of whether the omission of a definition of "serious physical injury" in a jury instruction on assault in the second degree was error. There we stated, "[t]he court read the jury the statutory definition of the essential element of the crime charged, namely use of a 'dangerous instrument.' 'Serious physical injury' is not itself, however, an essential element of the crime charged. It is but a definitional component of an essential element. A court's failure to read the statutory definition of a phrase which itself appears as part of the definition of an essential element is not an error of constitutional proportion. The court's obligation to charge on the essential elements of the crime charged ' "does not transform every deviation from the particular statutory definition chosen by the legislature into a constitutional error." ' *State* v. *Utz,* 201 Conn. 190, 513 A.2d 1191 (1986) [quoting *State* v. *Hinckley,* 198 Conn. 77, 502 A.2d 388 (1985)]. The

defendant has attached a constitutional label to what is analytically, at its core, a nonconstitutional claim." *State* v. *Huff,* supra 335.

In this case, the defendant argues that the error here was not in omitting a definition of "serious physical injury" but in giving an incorrect statutory definition, that of "physical injury."

The offense of assault in the second degree requires the state to prove as essential elements of the crime that the defendant intended to cause physical injury to the victim, that he did in fact cause physical injury, and that he did so by the use of a dangerous instrument. "Physical injury" is statutorily defined as "impairment of physical condition or pain." General Statutes § 53a-3 (3). The trial court properly gave this definition. "Dangerous instrument" is statutorily defined as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7). The trial court correctly gave this definition as well. "Serious physical injury" is further defined in the statutes as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." General Statutes § 53a-3 (4). This definition was not mentioned by the trial court. While the court's charge was not as artfully organized as it might have been, we conclude that its definitions amounted to no more than the omission of the statutory definition of "serious physical injury."

The defendant also contends that *Huff* does not control because the defendant in *Huff* conceded at trial that the miniature baseball bat used in the assault constituted a dangerous instrument, whereas, in this case,

the instrument used was never definitively identified. It is true that the court in *Huff* mentioned both the defendant's concession and the fact that the primary issue at trial was the identity of the assailant. *State* v. *Huff,* supra, 335–36. We conclude, however, that these references were set out solely as supplemental, not essential, support for upholding the trial court's instruction as given. The ultimate holding of *Huff,* that the court need define only the essential elements of the crime charged, not all of its definitional components, was not dependent on the fact that the use of a "dangerous instrument" was not at issue in that case. Finding the issue controlled by *Huff,* we decline to review this claim under *Evans.*

The defendant also asserts that the jury instruction is reviewable as plain error under Practice Book § 4185. "Where a trial court's action does not result in any manifest injustice, a defendant's claim under the plain error doctrine does not warrant review." *State* v. *Wright,* 207 Conn. 276, 288, 542 A.2d 299 (1988). "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings." *State* v. *Hinckley,* supra, 87–88. We conclude that the instruction at issue, viewed as a whole, does not indicate that the jury was misled into believing that the definition given for "physical injury" as an element of the crime, was the definition to be used in determining whether the instrument used was capable of causing "serious physical injury." Accordingly, the charge did not result in manifest injustice affecting the fairness of the proceeding and therefore does not warrant review under the plain error doctrine.

## II

The defendant next claims that the trial court erred in accepting his admission of a probation violation with-

out a proper determination that the admission constituted a voluntary and intelligent waiver of his constitutional rights.

On July 6, 1987, the defendant admitted to violating the terms of a two year probation period previously imposed upon his adjudication as a youthful offender on a charge of robbery in the third degree in violation of General Statutes § 53a-136. The violation that he admitted and that is at issue in this appeal is the April 3, 1987 assault conviction discussed above.[2]

The trial court advised the defendant of his right to a hearing to contest the probation violation and also advised him that an admission would result in the loss of that right. The defendant indicated his knowledge of these facts and that he had discussed the procedure with his attorney.[3] After this canvass, the trial court imposed a sentence of twenty-four months for the pro-

[2] At the same proceeding, the defendant also admitted to a violation of another term of probation imposed as a result of a breach of the peace conviction, and pleaded guilty to a charge of failure to appear in violation of General Statutes § 53a-173. The trial court imposed a sentence of six months on the former, to run consecutively with the youthful offender violation sentence, and a ten day sentence on the latter to run concurrently with the probation violation sentences. Because it is not briefed or claimed as error by the defendant, this court will not address the procedure of the trial court as it relates to the acceptance of the admission of this probation violation or the acceptance of the guilty plea.

[3] The following colloquy took place at the revocation proceeding:

"The Court: So, Mr. Johnston, do you know that you have a right to have a hearing on the violation of probation and by admitting that violation, you give up your right to a hearing?

"Mr. Johnston: Yes.

"The Court: And you have discussed this matter with your attorney?

"Mr. Johnston: Yes.

"The Court: Are you satisfied with his advice and assistance?

"Mr. Johnston: Yes.

"The Court: And you want to give up your right to have a hearing on this violation? This is a new conviction and you're giving up that right, do you understand that?

"Mr. Johnston: Yes."

bation violation to run concurrently with the five year sentence imposed for the assault conviction.

Again, not having raised the issue at trial, the defendant claims review under *State* v. *Evans,* supra. Such review is designed to allow appellate courts to consider matters not raised at trial in cases in which either "a new constitutional right not readily foreseeable has arisen between the time of trial and appeal" or "the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." Id., 70; *McLaughlin* v. *Bronson,* 206 Conn. 267, 276, 537 A.2d 1004 (1988). Our Supreme Court has recently considered the *Evans* doctrine and allowed review of issues raised in a habeas corpus action collaterally challenging a probation revocation procedure; *Payne* v. *Robinson,* 207 Conn. 565, 569, 541 A.2d 504, cert. denied, U.S. , 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988); we, therefore, will consider the application of the doctrine in this direct appeal from a probation revocation proceeding.

We find that although the defendant has labelled his claim a constitutional one, a limited review of the record before this court does not support a claim of constitutional proportions. See *State* v. *Huff,* supra, 333–34.

The United States Supreme Court has held that although due process does not require that a person facing probation revocation be provided the full panoply of rights afforded a defendant at a criminal trial, it does require that a hearing be held before probation is revoked. *Gagnon* v. *Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). Neither the United States Supreme Court nor any Connecticut court has determined what rights are to be accorded a person who waives the right to a hearing and admits a violation of probation.

The defendant in this case argues that an admission of a probation violation is the equivalent of a guilty plea.

He therefore claims that the court must canvass the defendant pursuant to Practice Book §§ 711–713 to insure the voluntary and intelligent waiver of the defendant's constitutional rights.[4] Although the defendant provides this court with no legal authority for such analogous treatment, the state, in its brief, cites other jurisdictions, both state and federal, that have held that an admission of a probation violation does not implicate the same rights as a plea of guilty, and that acceptance of such admission requires only that the court advise the defendant of his right to a hearing to contest the alleged violations.

In *United States* v. *Segal,* 549 F.2d 1293 (9th Cir.), cert. denied, 431 U.S. 919, 97 S. Ct. 2187, 53 L. Ed. 2d 231 (1977), the leading federal case on this issue, the court acknowledged the defendant's right to a hearing under *Gagnon* v. *Scarpelli,* supra, but determined that the requirements of *Boykin* v. *Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and rule 11 of the Federal Rules of Criminal Procedure requiring an extensive canvass by the trial court to determine that a guilty plea has been made intelligently and voluntarily did not apply to a revocation of probation. The court held that "the making of admissions at a probation revocation proceeding, even when sentence is subsequently imposed, is not the equivalent of a guilty plea, functional or otherwise." *United States* v. *Segal,* supra, 1300. See also, *United States* v. *Rapert,* 813 F.2d 182, 184 (8th Cir. 1987); *United States* v. *Stehl,* 665 F.2d 58, 59–60 (4th Cir. 1981); *United States* v. *Johns,* 625 F.2d 1175, 1176 (5th Cir. 1980).

[4] Specifically, the defendant claims that the trial court should have determined that he understood the nature of the violation he was admitting, the maximum sentence that could be imposed, that he had the right not to incriminate himself and the right to a hearing at which he could present evidence and confront and cross-examine witnesses. He also contends that the trial court should have inquired as to whether his willingness to admit the violation was the result of threat or promise or resulted from discussions with the state.

State courts faced with this issue have reached the same conclusion. In *People* v. *Hardin,* 70 Mich. App. 204, 206, 245 N.W.2d 566 (1976), the court declined to recognize the right of a person admitting a probation violation to be informed as to "the full panoply of rights set out . . . in the 'guilty plea' rule." The court held that "a defendant who desires to admit a probation violation must first be informed, on the record, of his right to have a hearing . . . . [H]e is entitled to a hearing to determine his culpability for the alleged violation. If the defendant advises the court that he does not want a hearing and admits the violation of probation on the record, the due process requirements are met." Id., 208; see also *Nelson* v. *State,* 66 Md. App. 304, 503 A.2d 1357 (1986).

The trial court in this case advised the defendant of his right to a hearing on the violation. The defendant admitted the probation violation on the record. Because there is no support for the contention that the requirements for determining the voluntariness of a guilty plea apply to the admission of a probation violation, the record does not indicate that the defendant's claim is of constitutional proportions and we therefore decline to review it under *Evans.*

There is no error on either appeal.

In this opinion the other judges concurred.