STATE OF CONNECTICUT *v.* RICHARD PRUNIER
(10103)

DALY, FOTI and HEIMAN, Js.

Argued June 1—decision released August 18, 1992

*Judith F. Machuga,* deputy assistant public defender, with whom, on the brief, was *Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Edward Narus,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3)[1]

---

[1] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commis-

and larceny in the sixth degree in violation of General Statutes § 53a-126b (a). The defendant claims that the trial court improperly (1) instructed the jury on a theory of criminality under § 53a-134 (a) (3) for which there was no evidence, (2) defined serious physical injury in its definition of dangerous instrument, (3) excluded evidence of possible third party culpability, and (4) defined reasonable doubt. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On January 7, 1989, Valerie Root was working at a package store in Windsor Locks. During the course of the afternoon, a man entered the store and approached Root as she was standing behind the cash register. The man pulled out a utility knife and said "This isn't a game; give me all the money or I'll cut you." Root gave him all the money in the cash register as well as additional money kept in a cigar box below the cash register. The man wanted more money, so Root removed her jewelry and gave it to him. After examining the jewelry, the man left it behind and exited the store. Root felt that the entire incident took about five minutes. There were no other people in the store at the time of the robbery.

Root reported the robbery to the police and gave a description of the perpetrator. She later viewed a series of photographs of possible suspects, and ultimately identified the defendant from a photograph as the person who committed the robbery. Root identified the defendant in court as the robber. The defendant testified that he was working near Boston on January 6, 1989, and returned home to Connecticut during the early evening hours. He further stated that he was taking care of his daughter on the day of the robbery.

sion of the crime [of robbery, defined in General Statutes § 53a-133] or of immediate flight therefrom, he . . . (3) uses or threatens the use of a dangerous instrument . . . ."

# I

The defendant claims that the trial court improperly instructed the jury on a theory of criminality for which there was no evidence presented by the state. The defendant argues that the court allowed the jury to consider the defendant's "use" of a dangerous instrument as a basis for supporting a conviction of a violation of § 53a-134 (a) (3). He argues that this was improper because the evidence indicated that the perpetrator only threatened to use the knife and did not actually use it. The defendant asserts that the court could not instruct the jury on the use of a dangerous instrument as there was no evidence that the perpetrator used the utility knife. The defendant interprets § 53a-134 (a) (3) as providing two separate methods of committing the crime of robbery in the first degree. The defendant posits that a person cannot "ordinarily use a dangerous instrument and at the same time threaten to use a dangerous instrument."

The court read § 53a-134 (a) (3) to the jury. The court noted that "the distinction between robbery and robbery in the first degree in the case before us is the threat to use a dangerous instrument." The court further stated that "[i]f you find that no actual physical force was inflicted upon the victim but that the victim was threatened with physical force, you must also find to sustain a verdict of guilty that the defendant threatened the victim with immediate use of physical force."

The defendant did not object to the court's charge. He seeks review of this claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[2] and *State* v.

---

[2] A defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a

*Evans,* 165 Conn. 61, 327 A.2d 576 (1973). We review this claim because it implicates the defendant's constitutional right to be proven guilty beyond a reasonable doubt of each element of the charged crime. *State* v. *Allen,* 216 Conn. 367, 388, 579 A.2d 1066 (1990).

Although the defendant relies on *State* v. *Williams,* 202 Conn. 349, 521 A.2d 150 (1987), to support his claim, his reliance on that case is misplaced. In *Williams,* the trial court instructed the jury on both subdivisions of General Statutes § 53a-133.[3] The state conceded that it did not present any evidence to support a conviction based on subdivision (2) of § 53a-133. Because there was no evidence to support a conviction under the second statutory alternative, the judgment of conviction was reversed even though there was sufficient evidence to support a conviction under subdivision (1) of § 53a-133. Reversal of the conviction was required because a trial court cannot submit to the jury an issue on which there is no evidence to support a finding. *State* v. *Williams,* supra, 364; *State* v. *Chapman,* 28 Conn. App. 360, 365, 610 A.2d 1328 (1992).

Here, the state has not conceded that there was no evidence to support the finding that the defendant used a dangerous instrument. The defendant seems to argue that "use" of a dangerous instrument requires that the instrument be used to harm the victim in order to over-

fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[3] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

come the victim's resistance. The defendant concedes that there was evidence to support a charge on the threat of use of a dangerous instrument under § 53a-134 (a) (3).

The term "use" is not defined in the Connecticut penal code. We conclude that once the defendant displayed the utility knife and ordered the victim to give him the money in the cash register, he used a dangerous instrument. The use of a dangerous instrument does not require evidence that the victim was actually touched or harmed by the instrument. In contrast, a threat to use a dangerous instrument also occurred in this case when the defendant threatened to cut the victim if she did not cooperate with him. Because there was evidence indicating that the defendant both used and threatened the use of a dangerous instrument, the trial court properly instructed the jury on both portions of § 53a-134 (a) (3). See *State* v. *John,* 210 Conn. 652, 688–89, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

## II

The defendant next claims that the trial court improperly instructed the jury as to what constitutes a "dangerous instrument"[4] for purposes of § 53a-134 (a) (3). The court first read the statutory definition of dangerous instrument and stated that "serious physical injury imports a meaning of more than physical injury." The court then gave the statutory definition of physical injury.[5]

---

[4] General Statutes § 53a-3 (7) provides in pertinent part: " 'Dangerous instrument' means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

[5] General Statutes § 53a-3 (4) provides: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

General Statutes § 53a-3 (3) provides: " 'Physical injury' means impairment of physical condition or pain . . . ."

The defendant argues that the trial court incorrectly defined "serious physical injury" because it did not read the statutory definition set forth in General Statutes § 53a-3 (4). The defendant claims that the court's statement about serious physical injury constituted an affirmative misstatement of an essential element of robbery in the first degree. The defendant did not properly preserve this claim by taking exception to the trial court's charge.

We conclude that the defendant is not entitled to review of this claim under either *State* v. *Golding,* supra, or under the plain error standard on the basis of *State* v. *Johnston,* 17 Conn. App. 226, 551 A.2d 1264 (1988), cert. denied, 210 Conn. 810, 556 A.2d 609 (1989), and *State* v. *Huff,* 10 Conn. App. 330, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987).

In *Huff,* the defendant sought to challenge for the first time on appeal the trial court's omission of the definition of serious physical injury as it related to the definition of dangerous instrument, an essential element of the crime of assault in the second degree. We declined to review the defendant's claim because " '[s]erious physical injury,' is not itself, however, an essential element of the crime charged. It is but a definitional component of an essential element. A court's failure to read the statutory definition of a phrase which itself appears as part of the definition of an essential element, is not an error of constitutional proportion." *State* v. *Huff,* supra, 335.

The defendant attempts to avoid this result by arguing that, in this case, the trial court misstated the meaning of serious physical injury, rather than merely omitting the definition of serious physical injury. The court did not give an incorrect definition of serious physical injury when it stated that it involves "more than physical injury." The court made clear that a seri-

ous physical injury is more than a physical injury. The court's failure to explain fully all of the definitional components of the essential element concerning a "dangerous instrument" did not rise to the level of a constitutional violation. See *State* v. *Johnston,* supra.

The defendant has failed to establish the existence of a constitutional violation that clearly deprived him of a fair trial. The defendant also has failed to establish the existence of plain error from the court's instruction on dangerous instrument that resulted in manifest injustice. See id.

## III

The defendant claims that the trial court improperly excluded evidence of third party culpability. We disagree.

The following additional facts are relevant to this claim. During his cross-examination of Detective John Murphy of the Windsor Locks police department, the defendant sought to present evidence about a robbery that occurred in Agawam, Massachusetts, on January 6, 1989. The Agawam robbery involved a suspect who had a similar physical description to that of the defendant. The Agawam suspect also employed a utility knife. The trial court refused to admit this evidence because the defendant failed to offer any evidence directly connecting any other person responsible for the Agawam robbery. The trial court sustained the state's objection and gave the defendant an exception. The trial court noted that it would allow further inquiry about the Agawam robbery if the defendant produced some evidence connecting the Agawam suspect to this robbery.

The defendant also sought to offer evidence of a robbery that took place in Enfield, a town near Windsor Locks. According to the defendant's offer of proof,

made outside of the jury's presence, the Enfield police brought the victim of the Enfield robbery to the defendant's arraignment. The victim in that case stated that the defendant was not the person who committed the Enfield robbery, which was committed in a manner similar to the Windsor Locks robbery. The defendant sought to develop this evidence through Officer Rick Rachele of the Windsor Locks police department. Defense counsel asked Rachele whether he remembered bringing the defendant to the Enfield courthouse for the defendant's arraignment. Rachele had no recollection of transporting the defendant to his arraignment. Defense counsel then stated: "I can't get anywhere if in fact this witness doesn't remember arraigning my client in Enfield court because he would then have no recollection of whether or not [the] Enfield police department had brought the victim in that robbery to Enfield court to identify my client, so I think the issue is moot as a practical matter, Your Honor." The court noted that it would not admit any evidence about the other robberies until there was some evidence linking a person other than the defendant to them. The court found that evidence indicating that the defendant was not responsible for the Enfield robbery was irrelevant to the issues in this case. The defendant never attempted to offer evidence linking another person to the Windsor Locks robbery.

Evidence indicating that a third party and not the defendant was responsible for the crime with which the defendant is charged is generally admissible. *State* v. *Burge,* 195 Conn. 232, 252, 487 A.2d 532 (1985). "The defendant, however, must show some evidence which directly connects a third party to the crime with which the defendant is charged. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which

the defendant is accused." (Citations omitted.) *State* v. *Echols,* 203 Conn. 385, 392, 524 A.2d 1143 (1987). "The trial court's ruling on the relevancy of third party inculpatory evidence will be reversed on appeal only if the court has abused its discretion or an injustice appears to have been done." *State* v. *Payne,* 219 Conn. 93, 117, 591 A.2d 1246 (1991).

The defendant failed to offer any reliable evidence linking a third party to the commission of the Windsor Locks robbery. The fact that the victim of a similar robbery in a nearby town stated that the defendant was not responsible does not constitute reliable evidence that the defendant did not commit the Windsor Locks robbery. The defendant never offered any evidence linking another person to the robbery in Windsor Locks. The trial court's finding that evidence of the other robberies was irrelevant did not constitute an abuse of discretion or cause an injustice.

## IV

The defendant's final claim concerns the trial court's instruction on reasonable doubt. The defendant argues that the trial court's references to the jurors' considering decisions in their own personal affairs when deciding on a verdict impermissibly diluted the state's burden of proof. Again, the defendant did not raise this issue at trial by taking an exception to the trial court's charge on reasonable doubt. He seeks review of this claim under *State* v. *Golding,* supra.

In *State* v. *Falcon,* 26 Conn. App. 259, 271, 600 A.2d 1036 (1991), we refused to review the defendant's unpreserved claim that "the trial court's instructions relating a reasonable doubt to the jurors' own affairs 'trivialized' the state's burden of proof." Id. This instruction did not constitute a constitutional violation. Id. Because the challenged instruction on reasonable doubt did not constitute a constitutional violation, we

refuse to review this claim. See *State* v. *Johnson,* 214 Conn. 161, 177–80, 571 A.2d 79, (1990). The instructions in the present case are almost identical to the instructions in *State* v. *Falcon,* supra, 270. We conclude that *State* v. *Falcon,* supra, controls the disposition of this claim.

The judgment is affirmed.

In this opinion the other judges concurred.