[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This post-dissolution proceeding involves numerous motions filed by both parties, each seeking affirmative relief in one respect or another. The primary position which the defendant husband advances is embodied in his motions to modify filed April 29, 1992 (#201) and August 23, 1993 (#221). In each of these motions he argues that the order of support for the minor children, Lauren and Jeffrey, is not in compliance with and substantially deviates from the guidelines promulgated by the Commission for Child Support Guidelines under 46b-86 of the General Statutes.[1]
The two minor children are presently thirteen and seventeen years of age respectively.
Dealing with this argument first, it is noted that the guidelines prescribe support levels only to a maximum combined net weekly income of $1,500. There are no guidelines for combined weekly income in excess of this figure.
The Deviation Criteria. The issue is governed by our Supreme Court's decision in Battersby v. Battersby, 218 Conn. 467 (1991), wherein the court held that the child support guidelines do not apply where the combined income level exceeds the maximum prescribed amount. While acknowledging the applicability of the Battersby rule, the defendant argues that nevertheless the deviation criteria prescribed in Section (a)(3) of the Guidelines general principles (1991 edition) ought to govern. That section states that proof of the existence of one of fourteen criteria will justify deviation from the guidelines and thus will enable the court to make a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. In response, it would seem logical that one can only deviate from a standard if the standard itself applies. Because Battersby holds that the guidelines have no application where joint income exceeds CT Page 176 the maximum limit this court holds that the deviation criteria do not apply unless the guidelines themselves apply. This is true even though according to Battersby, the upper limit sets the minimum applicable support level.
To the extent that the husband seeks to have the deviation criteria utilized to reduce the amount of child support to a level below the maximum, Battersby offers him no authoritative basis for doing so. The plaintiff wife on the other hand cites Battersby for the proposition that $270 per week per child derived from the guideline chart and Section (b)(2) is the minimum presumptive level applicable here. The court agrees.
The decisions which the defendant husband cites to bolster his argument are inapposite here. In Mullin v. Mullin, 28 Conn. App. 620
(1992) the guidelines plainly applied to the parties' income levels and hence it was proper for the court to have considered the deviation criteria. In Castro v. Castro, 31 Conn. App. 761 (1993) the parties' income level fell clearly within the guidelines and once again it was proper for the trial court to have considered the deviation criteria. In Carey v. Carey, 29 Conn. App. 436, 440
(1992) the court held that the guidelines were applicable were income did not exceed the self support reserve. Applying the Battersby rule, the guidelines do not apply in this case because the combined weekly income of the parties is in excess of the $1,500 maximum set forth in (a)(2) of the Guidelines general principles. At page 9 of the 1991 edition, the guidelines themselves mandate application of the highest amount as the
"minimum presumptive level". Section (c)(3) at p. 4 provides that when combined weekly income exceeds $1,500 the order should not be for less than that which is applicable at the highest level. Unlike with respect to combined weekly income which is under the minimum threshold or the self support reserve of $135, the guidelines do not expressly make the deviation criteria applicable. Thus, unlike Carey v. Carey, supra, where the court held that deviation criterion, (B), (present and potential earning capacity of a party) is applicable in a sub-self support reserve situation there is no similar exception where income exceeds the maximum amount. For this additional reason, the deviation criteria do not apply. Consequently, the court is not permitted to take into consideration either the wife's past earning record or her earning potential insofar as these conditions relate to the deviation criteria. On the other hand, they may be taken into consideration as part of the statutory criteria which the court is required to apply in considering a motion for modification under 46b-86. See, CT Page 177 Guidelines, Sec. (a)(1) p. 8. Such a conclusion is confirmed by the expressed language of 46b-86 which authorizes a modification of child support upon a showing of "a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines" (Emphasis added)
The Wife's Earning Capacity. As for the plaintiff wife's potential earning capacity, in Miller v. Miller, 181 Conn. 610, 612 (1980), the defendant husband had been employed for more than twenty years, except for a fourteen month period. The court held that evidence of this kind forms a sufficient basis for utilizing the defendant's earning capacity in determining an appropriate financial award. Similar evidence does not exist in this case. In fact, the plaintiff wife has been engaged in working in her new husband's businesses which so far have not been financially successful. On the other hand, she testified that her efforts are likely to pay off soon because her husband projects a 40% profit on certain pending contracts. Notwithstanding, the dollar amount of this project was never quantified. Her past performance with her husband's former businesses is no basis for projecting her earnings in the present business. She obviously has shown some skills in setting up computer operating systems for the business and has become actively involved in them, but the extent of her future earnings is not presently estimable because the success of the new business is not estimable. Her actual testimony is that she earned nothing in the businesses; that the businesses lost money. In fact, she has declared personal bankruptcy. This court knows of no principle which compels a wife to take outside employment in lieu of devoting herself to assisting her husband in starting a new business even though her husband's former businesses may have been a failure. This is especially so when the agreement (Section 3.6) states that any income earned from such endeavors shall not constitute a change in circumstances entitling the husband to seek and obtain a modification of support.
The second major grounds for seeking modification of the child support obligation is that applying the criteria set forth in 46b-86
the defendant should be given credit against his support obligation for both past and future expenditures for (a) the children's college education and (b) expenses voluntarily assumed by him to satisfy other needs and wants of the children.
A. College Expenses CT Page 178
In fashioning an alimony award the court may take into consideration the fact that the husband had been paying the college expenses of one child and intended to continue to do so. Breen v. Breen, 18 Conn. App. 166 (1989). In Rubino v. Rubino,7 Conn. L. Rptr. 36 (1992, Doherty, J.), this court extended the power to crafting a support order. However, no authority has been cited for the proposition that it is proper to do so in a post dissolution context where the college education expenses have been committed to in a separation agreement which became part of the decree. This is especially so where as here the defendant's annual income has increased since the time of the agreement from $55,000 to $168,240. There is no justification for crediting the defendant with any portion of these expenses.
B. Other Needs/Wants of the Children
The defendant seeks credit for the cost of Lauren's Bar Mitzvah and travel expenses of all three children to and from that event. He also seeks credit for sums paid on behalf of his two step-children. The short answer to the former claim is that such expenses are clearly within the defendant's power to control by limiting the magnitude of the celebration. As to the step-children, such voluntary expenditures are not specifically recognized under either 46b-84, 46b-86 or even the deviation criteria. Moreover, neither the financial affidavit nor the evidence reveals any breakout for any such expense actually incurred.
There was evidence of Jeffrey's special needs for psychological and/or psychiatric care and treatment. Article 7 of the Separation Agreement clearly makes this the sole responsibility of the defendant as long as the visits are "no greater in frequency and no more often than it is reasonable at the prevailing rates" The defendant offered no evidence as to the standard created in Article 7 nor as to the extraordinary nature of these services. The defendant is not entitled to credit for any of these.
Unreimbursed Medical Expenses
The defendant has demonstrated no change in circumstances which warrants modification of his contractual obligations under Article 7 of the Agreement. If any change of circumstances exists it grows out of the defendant's almost tripling of his annual income in ten years. CT Page 179
Other Equitable Factors
This request for modification is based on anticipated pleasure trips which the defendant plans to take with the children in the future. It is indefinite and problematical. Its reliance on the deviation standards is uninformed and misplaced for the reasons set forth above.
Request for Updated Financial Affidavit
The plaintiff's affidavit is as current as the defendant's. The plaintiff has complied with P.B. 463 and the court sees no need to order an update.
Credits, Past and Future for Support Payments Volunteered.
There are three factors which the court must consider in reaching a decision to credit or not to credit a payor with the amount of expenses paid for and/or on behalf of a child over and above ordered child support. They include: (1) whether the father brought a motion for modification of the support order; (2) whether the parties expressly provided in their separation agreement that the father may deduct or adjust the support payments when the child is no longer in the mother's custody; and (3) whether the mother has in some manner consented to accept the father's direct support of the child as an alternative method of payment of child support. Goold v. Goold, 11 Conn. App. 268 (1987). Considering each of the three factors in order the court finds with respect to each of the defendant husband's motions for modification as follows:
(A) First Motion for Modification #201 filed on April 29, 1992 was predicated solely on the deviation criteria of the child support Guidelines but made no mention of a desire to receive credit for these payments.
(B) The next motion (#208), was filed February 9, 1993, alleged with respect to Jeffrey that "the husband has been paying all costs related to private schooling arising out of Jeffrey's learning disabilities and emotional difficulties" (Emphasis added). An examination of the defendant's financial affidavit fails to disclose any breakdown of these expenses nor does it list them as liabilities. On the other hand, the defendant testified that he paid $11,300 for Jeffrey's tuition at Greens Farms Academy for the last school year in accordance with a recommendation from Jeffrey's CT Page 180 psychologist. For this, he is certainly entitled to some consideration. However, there was no evidence offered of any ongoing need for special education for Jeffrey. The defendant testified that he has spent $2,800 for medicals and $1,000 for clothing and miscellaneous. As previously stated, Article 7 of the separation agreement makes medicals his sole responsibility. As for that portion of the motion that relates to Cynthia, the defendant has failed to sustain his burden of proof in demonstrating that Cynthia no longer is living with her mother. Also, see footnote 1, supra.
(C) The motion filed August 23, 1993 (#221), like the motion described in (A) above, is limited in its scope to the claim that ordered support fails to comply with the child support Guidelines and so is likewise denied.
On the law, the defendant must fail. The decisions which the defendant cites as precedent for his position are clearly distinguishable as each of them involves situations where the child actually lived with the father for a considerable period of time and the equities were obvious.
As for the facts, neither the separation agreement, nor the wife's conduct indicate that either the second or third factor in
Goold has been satisfied.
Normally, alternate payments are made by the father while the child is in the father's physical custody. This was the case in Pensiero v. Pensiero, 3 CSCR 737, (1988, Hauser, J.) which the defendant cites. However, in Zofcak v. Zofcak, 8 Conn. L. Rptr. 1, 18 (November 23, 1992, Bassick, J.) the children did not reside with the father who claimed credit for the alternate payments. In fact, the alternate payments were overpayments that were apparently made in error. The court applied the Goold rule, and disallowed credit.
The Plaintiff's Motion for Contempt Dated August 26, 1993 (#223).
For the reasons set forth above and for the additional reason that the defendant has misinterpreted Sec. 3.8 of the separation agreement the defendant is hereby found in contempt. The court finds the arrearage to be $9,641.31. Since it is arguable whether Jeffrey's special schooling is a medical expense within the meaning of Article 7 of the separation agreement (the agreement is silent CT Page 181 on this point) the defendant ought, in fairness and in equity, to be given credit for one half of this amount, or $6,150. Accordingly, the defendant is ordered to pay the difference, or $3,491.31, to the plaintiff without interest, within sixty days of this date.
The Plaintiff's Amended Motion for Modification Dated August 26, 1993 (#222)
The plaintiff asserts that the defendant's employment requires him to travel abroad frequently and during these periods he is absent from his home when the children are in Connecticut for their scheduled visitation. She requests that visitation be modified to enable the children to avoid the trip from Florida to Connecticut when their father isn't going to be home for at least 75% of the time. While the concept is reasonable and appropriate the time limitation is too severe. It is hereby ordered that henceforth whenever the defendant anticipates that it is probable that he will not be at home at least 50% of the visitation period he shall notify the wife in writing of that probability at least two weeks prior to the scheduled visitation and the children shall have the option in such event to decline visitation.
The plaintiff further alleges that there has been a substantial change of circumstances in the defendant's financial condition. The court agrees. Both the defendant's financial affidavit and the evidence show that the defendant's assets have considerably more value now than at the time of the original decree. In addition, as stated above, his annual earnings have more than tripled. At the same time he has assumed additional financial burdens by remarrying into a second family. Taking all of these factors into consideration as well as the standards mandated by 46b-86, the court believes that a significant upward adjustment of support is in order. Consequently, support is modified so as to increase the weekly payment for each child to $335 effective with the next payment due.
As to transportation/visitation expenses, while section 2.2 of the separation agreement clearly imposes on the defendant the entire cost of transportation incident to visitation without limitation as to distance, the substantial enlargement of the distance from Connecticut to Florida results in extraordinary costs that ought to be adjusted in the defendant's favor. Hereafter, all transportation costs incurred to affect visitation shall be paid for 75% by the husband and 25% by the wife. CT Page 182
The Plaintiff's Motion for Order and Articulation Dated September 1, 1993.
There is nothing in the record of this proceeding which indicates that the action requested is either necessary or appropriate. The motion is denied.
Counsel Fees
The plaintiff seeks counsel fees pursuant to the authority conferred by 46b-62 and 46b-87. The plaintiff and the defendant cite the provisions of section 12.3 of the separation agreement which seem to govern the issue, Goold v. Goold, supra at 287. However, whether the matter is governed by the separation agreement or by statute will not alter the result. The plaintiff relies entirely upon her "Affidavit re: Counsel Fees" dated September 21, 1993. The defendant does not challenge either the genuineness of the entries in the affidavit or the reasonableness of the time charges. He does however, point out that some of the time was dedicated to motions other than the motion for contempt. While this is undoubtedly true, 46-62 expressly authorizes the court to award attorney's fees in any proceeding seeking relief under the provisions of Chapter 815j.
The court finds that this proceeding has been extremely complex, involved a multitude of convoluted issues and required the devotion of exceptional skill and competence by both attorneys. The court further finds that other than an IRA which if exhausted could wipe out her assets, the plaintiff cannot afford to pay her attorney's fees but the defendant can. Accordingly, the plaintiff's request for counsel fees is deemed reasonable and ought to be granted according to the standard set forth in 46b-62 and46b-87.
The defendant is ordered to pay the sum of 11,805.51 in attorney's fees to the plaintiff's attorney within 30 days.
MOTTOLESE, J.